J-S21031-23
J-S21032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.S., FATHER | : | |
| | : | |
| | : | No. 334 MDA 2023 |

Appeal from the Order Entered February 8, 2023
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s): CP-28-DP-37-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: I.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.S., FATHER | : | |
| | : | |
| | : | No. 335 MDA 2023 |

Appeal from the Order Entered February 8, 2023
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s): CP-28-DP-0000038-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.N., MOTHER | : | |
| | : | |
| | : | No. 336 MDA 2023 |

Appeal from the Order Entered February 8, 2023
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s): CP-28-DP-0000037-2022

J-S21031-23
J-S21032-23

IN THE INTEREST OF: I.S., A MINOR   :   IN THE SUPERIOR COURT OF
                                        :                PENNSYLVANIA
                                          :

APPEAL OF: K.N., MOTHER         :
                                          :

                                          :      No. 337 MDA 2023

Appeal from the Order Entered February 8, 2023
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s): CP-28-DP-0000038-2022

BEFORE: BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:     **FILED: JULY 25, 2023**

In these consolidated appeals, S.S. (Father) and K.N. (Mother) seek review of dependency orders of the Court of Common Pleas of Franklin County (trial court) finding that aggravated circumstances existed as to the minor children, K.S. and I.S., and changing the permanency review goal from reunification to placement with a permanent legal custodian as to each child. We affirm.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The guardian *ad litem* of both children filed an appellate brief in this case adopting the two identical briefs filed by the Franklin County Children and Youth Services.

- 2 -

**I.**

Father and Mother are the biological parents of K.S. and I.S. On July 26, 2022, when I.S. was about two months old, she was taken to the hospital. Father and Mother reported that I.S. had been vomiting and was non-responsive. I.S. survived, but a CT scan revealed that she had sustained unreported injuries to her skull which had caused internal bleeding and seizures.

Due to I.S.'s injury, Franklin County Children and Youth Services (CYS) received a "near fatality" referral, prompting the trial court to grant a verbal order for emergency protective custody of both I.S. and her sister, K.S. (age 2). Pursuant to the order, K.S. was immediately placed in foster care and I.S. was ordered to be placed in foster care after her discharge from the hospital.

A day later, as to both children, CYS filed an emergency protective custody application and a shelter care application. These applications were predicated on the circumstances of I.S.'s injury, as well as prior reports to CYS that I.S. and Mother had tested positive for controlled substances at the time of the child's birth; Father had a criminal history of child abuse; and the condition of the parents' home was not suitable for children. Further, CYS filed dependency petitions as to both children, alleging that each child was a "dependent child" who was without proper care or control.

On September 19, 2022, a shelter care hearing and consolidated adjudication and disposition hearing was held before a juvenile court hearing

officer. The hearing officer then recommended that clear and convincing evidence existed to substantiate the allegations set forth in the dependency petition, and that it was in the children's best interests to be removed from their parents' custody.

On September 23, 2022, the trial court adopted the findings of the juvenile court hearing officer and determined that K.S. and I.S. were dependent children. The children were ordered to remain in the custody of CYS and placed in foster care. As conditions of reunification, Father and Mother were directed to participate in parental fitness assessments, improve their housing situation, and maintain visitation with the two children.

Later, on October 14, 2022, CYS moved the trial court for a finding of aggravated circumstances in each child's case. The juvenile court hearing officer held an evidentiary hearing on CYS's motion on January 23, 2023. On that date, the hearing officer received the testimony of Dr. Kathryn Crowell, an expert in pediatric medicine. Dr. Crowell stated that she was a member of the medical team that treated I.S. when the child had received emergency care on July 26, 2022. **See** Transcript of Evidentiary Hearing, 1/23/2023, at pp. 6-8.

In her capacity as a treating physician, Dr. Crowell reviewed the child's medical records and consulted with family members. According to Dr. Crowell, I.S. had unexplained injuries to her scalp, as well as symptoms of withdrawal to controlled substances at the time of her birth. **See id**. at pp. 8-10. Dr.

Crowell testified that she examined I.S.'s skull and discovered indications of unreported trauma – retinal hemorrhages behind the child's eyes and a subdural hemorrhage near the brain. These hemorrhages (described as bleeding near the eyes and brain) had caused the child to suffer from seizures during her treatment. *See id*. at p. 23. Dr. Crowell opined that the injuries sustained by I.S. were consistent with "rotational injury of the head" and not from the sort of impact the child would have been able to inflict on herself. *See id*. at pp. 30-35. At some point, the child had also suffered from a left distal radial metaphyseal fracture (a broken wrist) which neither parent could account for. *See id*. at pp. 15-18.

In addition to the medical examination of I.S., the juvenile court hearing officer heard testimony concerning the observations of CYS caseworkers when they visited the home of Father and Mother. Photos of the home showed that it was littered with "various waste and refuse." *Id*. at p. 55. Controlled substances, drug paraphernalia and prescription medications were found in areas of the home that were accessible to K.S., including in the child's bedroom. *See id*. at p. 54-57.

As of the date of the hearing held on January 23, 2023, neither Father nor Mother had contacted CYS for the prior six months, despite that ongoing contact was a condition of their reunification with the children. *See id*. at pp. 56-58. Nor had either parent demonstrated the ability to provide appropriate

housing for them.  ***See id***. at p. 68.  Both parents were charged with committing child abuse in connection with the findings of CYS.[2]

On February 6, 2023, the juvenile court hearing officer submitted to the trial court a recommendation of aggravated circumstances as to both children.  ***See*** Recommendation – Aggravated Circumstances, 2/8/2023, at paras. 1-23.  As to both K.S. and I.S., the hearing officer found clear and convincing evidence that the children were victims of abuse and that the parents were the perpetrators of the abuse; that aggravated circumstances exist with respect to Father and Mother "in that the child or another child of the parent has been a victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated neglect by the parent"; and that it was in the children's best interest that CYS make no further efforts to preserve the family and reunify the children with Father or Mother. Further, the hearing officer recommended that the permanency goal be changed from reunification to placement with a permanent legal custodian.  ***See id***. at para. 24.

On February 8, 2023, after review, the trial court approved and adopted the hearing officer's recommendations.  The trial court ordered that CYS retain custody of the children, and that due to the finding of aggravated circumstances, CYS would make no further effort toward reunifying the

---

[2] The record on appeal does not indicate the manner in which the criminal charges against Father and Mother were resolved.

children with either parent. The placement goal was changed from reunification to placement with a non-relative permanent legal custodian.

Father and Mother both sought review of the order and filed identical 1925(b) statements of issues complained of on appeal. While somewhat vague, the issues included claims that the evidence did not support a finding of aggravated circumstances or a determination that efforts at reunification should cease.

The trial court issued a single opinion stating the reasons why its orders pertaining to Father and Mother should be affirmed as to both children. **See** Trial Court 1925(a) Opinion, 3/9/2023, at 6-12.[3] In general, the trial court found the 1925(b) statements to be too vague to allow a cogent response, resulting in a waiver of all of Father and Mother's appellate claims. However, in the alternative, the trial court stated that the record evidence (in particular, the testimony of Dr. Crowell supporting the recommendations of the juvenile court hearing officer) was sufficient to sustain the determination that there existed aggravating circumstances which would warrant a goal change from

_____

[3] Neither Father nor Mother requested a rehearing of this matter *de novo* before the trial court, as provided for in 42 Pa.C.S. § 6305(d). Accordingly, the juvenile court hearing officer's findings and recommendations were adopted by the trial court on February 8, 2023. As noted in the trial court's 1925(a) opinion, an order finding that aggravated circumstances exist is a collateral order which is immediately appealable as of right. **See In re. R.C.**, 945 A.2d 182, 184 (Pa. Super. 2008).

- 7 -

reunification to placement with a permanent legal custodian. **See** Trial Court Opinion, 3/9/2023, at pp. 10-11.

## II.

## A.

Father and Mother's central contention is that the trial court abused its discretion in finding aggravating circumstances and changing the permanency review goal from reunification to placement with a permanent legal custodian.

"[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record . . . but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion." **In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted). On review, "we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan." **Id**. at 1190.

The Juvenile Act governs proceedings to change a child's permanent placement goal. **See generally** 42 Pa.C.S. §§ 6301-6375. When considering a request to modify permanency goals, the trial court must focus on the health and safety of the child, which takes precedence over all other considerations. **See In re A.H.**, 763 A.2d 873, 878 (Pa. Super. 2000). To that end, the trial court must consider, *inter alia*:

(1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court[.]

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citing 42 Pa.C.S. § 6351(f)).

Although the rights of a parent and parental progress toward reunification with a child are significant factors, they are "not to be elevated to determinative status, to the exclusion of all other factors." *In the Interest of M.T.*, 101 A.3d 1163, 1175 (Pa. Super. 2014). Further, there is no minimum period of time in which a child's goal must be set at reunification before it can be changed. *See In re M.S.*, 980 A.2d 612 (Pa. Super. 2009). "[A] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003).

Under controlling federal and state law, CYS must make reasonable efforts to preserve and reunify families; however, a finding of "aggravated circumstances" requires the trial court to determine if efforts at reunification should continue. *See* 42 U.S.C. § 671(a)(15); 42 Pa.C.S. § 6351(e)(2). "Aggravated circumstances" may be found where the evidence demonstrates

that "[t]he child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent."  42 Pa.C.S. § 6302.

"Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id*.  "Aggravated physical neglect" is defined as "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id*.

The court does not need to find aggravated circumstances "as to a particular party; rather, it merely must determine whether they are present in the case."  *In re R.P.*, 957 A.2d 1205, 1219 (Pa. Super. 2008).  The purpose of a finding of aggravated circumstances is "to eliminate the need for family reunification efforts when it is established that children were exposed to sexual or physical abuse ... [because] [t]hese parents have exhibited no responsibilities attendant with parenting but have been abusive and grossly neglectful[.]" *Id*. (quoting *In re C.B.*, 861 A.2d 287, 298 (Pa. Super. 2004)).

After a finding of aggravated circumstances is made, the focus is directed "away from any parental rights and toward the protection of these innocent, scarred children, who have been subjected to egregious horrors that shake the very foundations of the precious family institution."  *In re R.P.*, 957 A.2d at 1219.  If the trial court finds "from clear and convincing evidence

that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made[.]" 42 Pa.C.S. § 6341(c.1).

**B.**

Here, in Father and Mother's respective briefs, they each argue that the trial court abused its discretion in finding aggravated circumstances and changing the children's permanency goals from reunification to placement with a permanent legal custodian. We find that no appellate relief is due.

At the outset, we find that Father and Mother have preserved their appellate claims. While vague, their 1925(b) statements plainly assert that the record does not support the trial court's findings of aggravated circumstances and whether a goal change was warranted.

Turning to the merits, we find that the trial court did not abuse its discretion in determining that there were aggravated circumstances as to each child. Nor did the trial court abuse its discretion in changing the permanency goal to placement with a permanent legal custodian as to both children.

The two children were placed in temporary emergency custody following I.S.'s treatment at a hospital for near-fatal injuries to her head. She had also broken an arm at some point. Father and Mother could not explain how their child had been so seriously injured during her short life, and a medical expert testified that the types of injuries sustained could not have been self-inflicted.

Once it intervened in I.S.'s case, CYS became concerned with the care of K.S., who was two years old at the time. CYS caseworkers discovered at Father and Mother's home controlled substances and drug paraphernalia in areas easily accessible to the children. Under the Juvenile Code, this was clear and convincing evidence of aggravating circumstances as to both children. The life-threatening injuries sustained by I.S. and the evident neglect of K.S. amounted to aggravating circumstances.

Once the trial court made that determination, the trial court acted within its discretion in determining that CYS no longer needed to make reasonable efforts to reunify the children with Father and Mother and that the permanency plan would be changed to placement with a permanent legal custodian. After the children were adjudicated dependent, Father and Mother were directed to participate in a reunification plan that called for their participation in substance abuse treatment, for them to be in regular contact with CYS, and for them to be in regular contact with the children. However, for the six months preceding the aggravated circumstances hearing, Father and Mother had not complied with any of those directives.

Thus, the evidence before the trial court indicated that Father and Mother were unable to care for their two children, and that their circumstances would not be remedied in the foreseeable future. Based on these circumstances, the trial court did not err in determining that reasonable efforts

- 12 -

were no longer needed to reunify the family and that a goal change was in the children's best interests. *See* 42 Pa.C.S. § 6341(c.1).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/25/2023