**In re R.C.**

**Appeal of T.B., Natural Father.**

Superior Court of Pennsylvania.

Submitted Jan. 14, 2008.
Filed Feb. 27, 2008.

Catherine L. Volponi, Pittsburgh, for appellant.

J. Marie Webb, Pittsburgh, for Kids Voice, appellee.

Jeffrey J. Ruder, Pittsburgh, for CYF, appellee.

BEFORE: PANELLA, SHOGAN and TAMILIA, JJ.

Opinion by TAMILIA, J.

¶ 1 This is an appeal by father, T.B., challenging the May 30, 2007, Order which found aggravated circumstances existed as to him as a result of his failure to maintain substantial and continuing contact with his minor child, R.C., DOB March 10, 2005. The Order also stated that no further efforts would be made to reunite father and child. At the time these proceedings were initiated and the court's May 30, 2007, Order was entered, father was incarcerated and awaiting trial on the January 13, 2006, murder of R.C.'s mother. On October 10, 2007, appellant was found guilty of first degree murder, and on January 7, 2008, he was sentenced to life imprisonment without parole. The procedural history of this case, as reflected in the record, follows.

¶ 2 On January 13, 2006, appellant was arrested in connection with the murder of R.C.'s mother. A shelter hearing was conducted on January 18, 2006, and ten-month-old R.C. was placed in the care of her maternal great-uncle, O.H., and she remains in his care to date. On February 22, 2006, a dependency hearing was conducted and R.C. was adjudicated dependent based on her mother's death and her father's incarceration. Also by this Order, the court directed that R.C. remain in the care of her great-uncle and that the incarcerated appellant have no contact with his daughter. Record, No. 3. No appeal from this February 22, 2006, Order was filed, but we note that at this juncture, appellant was not represented by counsel, and he was not present at the dependency hearing.

¶ 3 On June 7, 2006, following a permanency review hearing, the court entered an Order directing that while placement with the great-uncle should continue, the goal for the child remained "return home." Record, No. 6. At this point, aggravated circumstances were not alleged, and no petition to terminate parental rights had been filed. *Id.* We note that it was only on June 6, 2006, that appellant obtained *pro bono* counsel.

¶ 4 On August 17, 2006, the agency, the Allegheny County Office of Children, Youth and Families, hereinafter CYF, filed a petition for finding of aggravated circumstances, based on that fact that more than six months had passed since father had contact with R.C. The petition alleged father had "failed to maintain substantial and continuing contact with the child for a period of six months," and father had homicide charges pending. The petition also stated that father had not contacted CYF during the six-month period, despite CYF having "sent all documentation to father while incarcerated[.]" *See* Petition to Schedule hearing for Petition for Aggravated Circumstances. On September 6, 2006, CYF's goal was changed from reunification to adoption. No appeal from this Order was taken.

¶ 5 The petition for a finding of aggravated circumstances, originally filed August 17, 2006, was continued repeatedly until a hearing eventually was conducted on May 30, 2007. After the hearing, the court found aggravated circumstances did exist as to father, the court basing its finding on the fact appellant had failed to contact his daughter for more than six months. The Order also stated that no further efforts would be made to preserve the family and to reunite R.C. with appellant.

¶ 6 Appellant filed a motion for reconsideration on June 20, 2007, and argued that at the time the no-contact Order was entered on February 22, 2006, he was not represented by counsel, and insufficient evidence was presented to establish father was a "grave threat" to R.C. Appellant also argued that since being represented

by counsel, as of June 6, 2006, he had expressed his desire to maintain contact with R.C., but was unable to do so due to the court's February 22, 2006, no-contact Order. Appellant added that no "foster-care drift" had occurred because the child had been placed with a family member. Appellant's motion was denied on June 27, 2007, and on June 29, 2007, appellant filed a timely notice of appeal.

¶ 7 In compliance with the court's July 3, 2007, Order, appellant filed a statement of matters complained of on appeal on July 13, 2007, wherein he raised one issue: that despite the uncontested testimony that the court had entered a no-contact Order, and that father, at that time, was incarcerated and awaiting trial, the "court used natural father's lack of visitation as a basis for finding of Aggravated Circumstances under 42 Pa.C.S. § 6302 Aggravated Circumstances (1)(ii)." [1] For the reasons that follow, we vacate the Order of May 30, 2007, and remand for proceedings consistent with this Opinion.

■ ¶ 8 Initially, we note that by definition this is an appeal as of right from a collateral Order: "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." *See* Pa.R.A.P. 313, **Collateral Orders (b) Definition.** If this Court were to wait to address the finding of aggravated circumstances until CYF files a petition to involuntarily terminate appellant's parental rights, which to date it has not, appel-

lant would lose the opportunity to challenge what most likely will be the very basis for that petition, his failure to have maintained contact with his daughter for more than six months. For that reason, we conclude the May 30, 2007, Order is a collateral Order and appealable as of right. *See id.*

■ ¶ 9 CYF alleges in its brief, in addition to its petition's claim that appellant did not contact R.C. for six months, that during the pertinent six-month period, appellant also never contacted CYF to inquire about the child's well being or to obtain services that would assist him in an effort to regain visitation. CYF further argues that the lack of any exception to the statute defining aggravated circumstances necessarily implies none exists; that is to say, "if a parent doesn't visit for six (6) months, Aggravated Circumstances exist, regardless of the reason proffered by the parent." Appellee CYF's brief at 5. We find CYF's argument circuitous and unconvincing.

¶ 10 We do not question the propriety of the court's February 22, 2006, Order directing that father not be allowed to contact his 10–month–old daughter, whose mother appellant had murdered. *See Green v. Sneeringer,* 431 Pa.Super. 66, 635 A.2d 1074 (1993). Logic dictates, however, that CYF cannot then turn around and use father's very compliance with that Order as the basis for its petition to find aggravated circumstances based on the fact appellant failed to contact R.C. for more than six months. The statute states that if aggravated circumstances are found by the court, "the court shall determine whether or not reasonable efforts to pre-

---

1. While the docket reflects appellant filed his court-ordered, timely 1925(b) statement of matters complained of on appeal on July 13, 2007, the actual document does not appear in the certified record; it is, however, included in the appendix of appellant's brief, and nei-

ther appellee nor the court challenges its filing. We note that any claim of error relative to not having counsel when the February 22, 2006, no-contact Order was entered, is waived by failing to include it in the 1925(b) statement.

vent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a [permanency] hearing as required." 42 Pa. C.S. § 6341, **Adjudication (c.1) Aggravated circumstances.** Because herein the court's finding of aggravated circumstances was based on appellant's compliance with the court's February 22, 2006, Order, and that finding led to the court's decision that reunification would not be pursued, as included in the May 30, 2007, Order, we are constrained to vacate the May 30, 2007, Order, which effectively, if not legally, stripped father of his parental rights. We remand this case for any additional proceedings that may rectify this procedural quagmire and enable the parties to obtain the ultimate, just end, that being what is in the best interests of R.C.

¶ 11 We so order while acknowledging, nonetheless, that no basis exists upon which to overturn the court's September 6, 2006, Order that changed the agency goal from that of reunification to that of adoption. Given the egregious facts underlying appellant's conviction, that being the heinous murder of R.C.'s mother, and the related sentence of life imprisonment without parole imposed as a result of that conviction, it is apparent to this Court that CYF has more than substantial reasons upon which to base a petition to involuntarily terminate appellant's parental rights to his now, almost three-year-old daughter, who has lived the majority of her life with her great uncle and great aunt, in what has been found to be a loving and stable environment.

¶ 12 Order vacated; Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.