J-S22005-21

2021 PA Super 177

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.-G., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF M.G., FATHER | : : : : : | |
| | : | No. 544 MDA 2021 |

Appeal from the Order Entered March 29, 2021
In the Court of Common Pleas of Franklin County
Juvenile Division at No(s):  CP-28-DP-0000025-2019

BEFORE:   PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

OPINION BY PANELLA, P.J.:                    **FILED SEPTEMBER 03, 2021**

M.G. ("Father") appeals from the order entered March 29, 2021, which found his daughter, A.D.-G. ("Child"), remained dependent, denied his motion to terminate the dependency, found aggravated circumstances based on Father's history of sexual abuse, and directed no further efforts be made to reunify him with Child.[1]  Father contends that the juvenile court violated his right to due process, and that the evidence did not support the court's dependency finding. Because we discern no error of law or abuse of discretion, we affirm.

Franklin County Children and Youth Service ("CYS") became involved with Child at the time she was born in February 2019, when she and Mother

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, E.G. ("Mother"), did not appeal the juvenile court's order and did not participate in this appeal.

tested positive for illegal substances. ***See*** Recommendation for Adjudication and Disposition, 4/2/19, at 1-2. Mother consented to a safety plan, which provided she would have no unsupervised contact with Child. ***See id.*** at 2-3. CYS learned, however, that Mother violated the plan by having unsupervised contact. ***See id.*** at 3-4.

In response, CYS obtained emergency protective custody of Child pursuant to a verbal order which the court confirmed in writing on March 19, 2019. The court scheduled a shelter care hearing but continued the matter at Mother's request and consolidated it with Child's adjudication and disposition hearing. The consolidated hearing occurred before a hearing officer on March 28, 2019, after which the hearing officer issued a recommendation that Child be adjudicated dependent. The court adopted the recommendation on April 2, 2019, and Child has remained in foster care since then.

At the time of the adjudication of dependency, CYS did not know Father was Child's natural father. Mother had identified another man, J.D., as Child's father, and J.D. was listed as Child's father in court filings through October 2019. The record indicates J.D. was incarcerated at the time of Child's adjudication. ***See id.*** at 4-6; N.T., 2/9/21, at 11. After a paternity test revealed J.D. was not Child's father, Mother provided CYS with a vague description of another man. ***See*** N.T., 2/9/21, at 12. CYS ultimately identified the man as Father. ***See id.*** A paternity test in November 2019 confirmed that Father was Child's natural father. ***See id.*** at 12-13.

Significantly, CYS discovered soon thereafter that Father is a registered sexual offender. Father had sexually abused his own sister, beginning when she was about one year old, and he was eleven years old. **See id.** at 22-23, 28-29, 36. The sexual abuse continued until Father's sister was eleven years old, and he was twenty-one years old and had been married for two years. **See id.** 28-29, 36-37. As a result of this, Father pled guilty to misdemeanor indecent assault and was found to be a sexually violent predator ("SVP").[2] **See id.** at 123; CYS Exhibits 1-3 (documents relating to Father's conviction and SVP status).

On December 13, 2019, CYS filed a motion requesting that the juvenile court find aggravated circumstances, based on Father's conviction for indecent assault. The hearing officer recommended a finding of aggravated circumstances on October 7, 2020. In addition, the hearing officer recommended that no further efforts be made to reunify Child and Father. On October 8, 2020, the court adopted the recommendation. Father filed a motion challenging the hearing officer's recommendation on October 16, 2020, and an amended motion on October 20, 2020. By order entered on October 23, 2020, the court scheduled a *de novo* hearing.

_____

[2] The statutory definitions of SVP now appear at 42 Pa.C.S.A. §§ 9799.12 and 9799.53. The 2008 order finding Father to be an SVP cited a prior version of the sexual offender registration statute. **See** CYS Exhibit 3 (finding Father to be an SVP as defined at 42 Pa.C.S.A. § 9792). All three versions of the definition use similar language and define an SVP as, in relevant part, a person with a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

On November 6, 2020, Father also filed a "Motion to Dismiss/Terminate" Child's dependency. He argued he was not notified of the initial proceedings in this matter, such as Child's placement in foster care and adjudication, that he never had the opportunity to defend himself in those proceedings, and that the court never determined whether he could provide Child with proper care. Father also requested a hearing so that the juvenile court could determine his fitness to provide proper care.

Ultimately, the juvenile court held its *de novo* hearing on CYS's motion for a finding of aggravated circumstances and addressed Father's motion to end Child's dependency on February 9, 2021. CYS presented testimony from its caseworker, Gayle Schreiber, and called Father as on cross-examination. CYS then presented the testimony of Child's foster mother, S.B.; Alternative Behavioral Consultants parent educator, Charity Brallier, who performed an assessment of Father's parenting ability; and Rita Lukas, president of Father's previous sexual offender treatment provider, FAACT, Inc. Father presented testimony from Tracey Boyle, a licensed professional counselor who performed an assessment of his risk of harm to Child. He also testified on his own behalf.

On March 29, 2021, the juvenile court entered an order (1) finding Child remained dependent, (2) denying Father's motion to end Child's dependency, (3) finding aggravated circumstances existed due to Father's indecent assault conviction and status as an SVP, and (4) directing no further efforts be made

to reunify Father and Child.[3]  Father timely filed a notice of appeal on April 28,

2021, along with a concise statement of errors complained of on appeal.[4]

Father now purports to raise the following claims for our review:

I. Whether it was an abuse of discretion for the [juvenile] court to find aggravated circumstances against [] [F]ather before there was any adjudication of child dependency as against Father[?]

II. Whether the [juvenile] court properly adjudicated dependency when [C]hild was adjudicated dependent prior to [Father] being notified of a dependency proceeding; [Father] did not have opportunity to challenge dependency adjudication; [C]hild was never alleged to be dependent as against [] [F]ather and while in [Father's] care[?]

III. Whether [Father's] status as an SVP . . . was a proper basis to deny [Father] custody of [C]hild and terminate dependency when [Father's] SVP status came from conduct beginning while [Father] was a juvenile, and was committed prior to the birth of any of his children[?]

IV. Whether [Father's] due process rights were violated when Father requested a rehearing of shelter care, when the [juvenile] court held an aggravated circumstances hearing before there was a finding of dependency as to Father and, when no petition alleging dependency was ever filed as against [Father?]

Father's Brief at 5-6.

_____

[3] The order also directed that a permanency review hearing occur within thirty days.

[4] Our case law indicates this was appealable as a collateral order pursuant to Pa.R.A.P. 313.  **See In re R.C.**, 945 A.2d 182, 184 (Pa. Super. 2008) (explaining that the order finding aggravated circumstances and ending reunification services was "by definition . . . an appeal as of right from a collateral Order").

Before beginning our review, we address Father's defective presentation of his claims on appeal. While Father includes four claims in his statement of questions involved, he divides the argument in his brief into two sections, each containing numerous subclaims, which he does not divide under headings or organize in any other coherent fashion. *Cf.* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein"). Father's noncompliance with our rules is not so substantial as to impede meaningful appellate review and require dismissal of his entire appeal, but we caution his counsel to comply strictly with our briefing rules in any future appeals. *See* Pa.R.A.P. 2101 ("[I]f the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); ***Krauss v. Trane U.S. Inc.***, 104 A.3d 556, 584 (Pa. Super. 2014) ("When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Turning to the merits, we divide Father's claims into two categories for ease of disposition. Father contends (1) that the juvenile court violated his right to due process, and (2) that the evidence does not support the court's finding that Child is a dependent child pursuant to the Juvenile Act.

Regarding Father's assertion that the court violated his right to due process, this raises a question of law for which our standard of review is *de*

*novo*. ***See Interest of S.L.***, 202 A.3d 723, 729 (Pa. Super. 2019). A parent has the right to due process in any dependency case involving his or her child. ***See***, ***e.g.***, ***In Interest of Jones***, 429 A.2d 671 (Pa. Super. 1981). This right is not without limit, however. ***See S.T. v. R.W.***, 192 A.3d 1155, 1161 (Pa. Super. 2018) ("Due process is flexible and calls for such procedural protections as the situation demands."). "'[P]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.'" ***Id.*** at 1161 (quoting ***J.M. v. K.W.***, 164 A.3d 1260, 1269 (Pa. Super. 2017)).

We begin with Father's due process claims. Father contends he was not notified of the initial dependency proceedings in this case and did not receive the opportunity to defend against CYS's dependency allegations. ***See*** Father's Brief at 10, 15-16. Father further argues the juvenile court failed to require CYS to file a dependency petition against him, specifically. ***See id.*** at 11-12, 15. He maintains CYS never alleged Child was dependent while in his care, and that its failure to file a petition deprived the court of jurisdiction to make a dependency finding against him. ***See id.*** at 12-13. Finally, Father asserts the court erroneously conducted an aggravated circumstances hearing before making the necessary dependency finding. ***See id.*** at 14, 16.

We discern no error of law or abuse of discretion in the juvenile court's analysis. As discussed in our summary of the facts and procedural history of this case, the court and CYS did not initially know Father was Child's natural

father. Mother had identified another man, J.D., as Child's father, and the court and CYS did not learn the truth until November 2019, seven months after Child's adjudication of dependency in April 2019. **See** N.T., 2/9/21, at 11-13. It was impossible for the court and CYS to notify Father of Child's initial dependency proceedings or facilitate his participation in those proceedings. To the extent Father contends he did not receive the opportunity to challenge Child's status as dependent, however, he is incorrect. Father filed a motion to end Child's dependency, and the court held a hearing to provide Father that opportunity.

Further, we note permanency review hearings occurred on January 9, 2020, August 20, 2020, November 5, 2020, and February 4, 2021, which included determinations of whether Child remained dependent. **In the Interest of H.K.**, 172 A.3d 71, 79 (Pa. Super. 2017) (citing 42 Pa.C.S.A. § 6351(e)-(f.1); Pa.R.J.C.P. 1607–1609) ("[Juvenile] courts in dependency matters must conduct periodic permanency review hearings during which they assess, among other things, whether the child remains dependent"). As such, these were also opportunities for Father to present evidence and challenge Child's dependent status.

Father also argues that the juvenile court lacked jurisdiction because CYS failed to file a dependency petition against him. Father's argument is misplaced. The Juvenile Act confers jurisdiction on the appropriate court of common pleas to address petitions alleging that a child is dependent. **See** 42

Pa.C.S.A § 6321; *see also In re A.L.*, 779 A.2d 1172, 1175 (Pa. Super. 2001). Accordingly, once an appropriate party has filed a petition with the appropriate court alleging that a child is dependent, that court has jurisdiction to address the petition. *See id*.

For example, if an infant was found alone on the street after midnight in winter, a local agency could file a dependency petition with no parents named. The petition would grant the local court jurisdiction to assess and address the needs of the child while also pursuing the identity of the parents. If the parents are located, then due process concerns require that they be provided notice and an opportunity to be heard in any future dependency proceedings. But jurisdiction over the dependency petition would be unaffected.

Here, CYS filed its petition pursuant to Section 6302(1), alleging that Child lacked proper parental care or control. *See In re M.L.*, 757 A.2d 849, 851 (Pa. 2000). Child unquestionably met this definition during the initial dependency proceedings. Mother was engaging in substance abuse and violated CYS's safety plan, while putative father J.D. was incarcerated. *See* Recommendation for Adjudication and Disposition, 4/2/19, at 1-6; N.T., 2/9/21, at 11.

The court and CYS did not realize Father existed, and Father did not realize Child existed. *See* N.T., 2/9/21, at 11-13, 191. Accordingly, Father could not provide Child with proper parental care or control at that time,

either. Accordingly, the court had jurisdiction over CYS's petition. And, as discussed previously, once Father was identified as a party with a protected interest in the matter, he was provided with notice and an opportunity to be heard by an impartial tribunal on the issue of Child's needs and welfare. Father has not established that the dependency proceeding violated his due process rights.

Father's final due process argument, that the juvenile court improperly found aggravated circumstances before making a dependency finding against him, fails for the same reasons. Once again, courts make dependency findings as to individual children, not individual parents. **See In re J.C.**, 5 A.3d at 289. Once the court adjudicated Child dependent in April 2019, the Juvenile Act permitted it to find aggravated circumstances, and no second adjudication of dependency as to Father was necessary. **See** 42 Pa.C.S.A. §§ 6341(c.1), 6351(e)(2); Pa.R.J.C.P. 1705. As noted above, what due process required was that once Father was identified as an interested party, he was entitled to notice of the proceedings and an opportunity to be heard. As Father has not established his interests were impaired without notice or an opportunity to be heard by an impartial tribunal, his due process claim fails.

We now turn our attention to Father's second set of claims, where he challenges the juvenile court's finding that Child remains dependent. We review orders in dependency proceedings for an abuse of discretion. **See In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010). We must accept the juvenile court's

- 10 -

findings of fact and credibility determinations if the record supports them, but we need not accept the court's inferences or conclusions of law. ***See id.***

Father argues Child is not dependent because he can provide her with proper parental care and control. ***See*** Father's Brief at 9-10, 13. The Juvenile Act governs dependency proceedings. ***See*** 42 Pa.C.S.A. §§ 6301–6375. A juvenile court may adjudicate a child dependent if it determines by clear and convincing evidence that he or she meets the requirements of one of ten definitions listed under § 6302. ***See*** 42 Pa.C.S.A. §§ 6302, 6341(c); Pa.R.J.C.P. 1409(A)(1). Here, the court found Child met the first of these definitions, which defines a child as dependent when lacking "proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302(1).

If the juvenile court adjudicates a child dependent, and either the county agency or the child's attorney has alleged aggravated circumstances exist, the court must then determine the veracity of those allegations. ***See*** 42 Pa.C.S.A. §§ 6341(c.1), 6351(e)(2); Pa.R.J.C.P. 1705. If the court finds by clear and convincing evidence that aggravated circumstances do exist, it must consider whether reasonable efforts to prevent or eliminate the need to remove the child or to preserve and reunify the family should be made or continue to be made. ***See id.*** The court may direct that no reasonable efforts be made or continue to be made at its discretion. ***See In re L.V.***, 127 A.3d 831, 839 (Pa.

Super. 2015) (citing *In re A.H.*, 763 A.2d 873, 878 (Pa. Super. 2000)). Of relevance to this appeal, the Juvenile Act defines "Aggravated circumstances" to include situations where the parent has been convicted of misdemeanor indecent assault pursuant to 18 Pa.C.S.A. § 3126 and, separately, where the parent must register as a sexual offender. *See* 42 Pa.C.S.A. § 6302(3)(iii), (6).

Father contends the court based its finding on his lack of a bond with Child and his SVP status. *See id.* at 9, 13. According to Father, this was improper because his lack of a bond with Child resulted from the court suspending his visits with her and because he incurred his SVP status long before she was born. *See id.* at 9, 13-14. In addition, Father attempts to suggest that his SVP status is irrelevant to the question of whether Child is dependent, because the definition of "Dependent child" in the Juvenile Act does not mention SVP status as a factor. *See id.* at 9-10, 14.

The juvenile court explained in its opinion accompanying the order on appeal that Father could not provide Child with proper parental care or control. *See* Opinion and Order of Court, 3/29/21, at 12. It acknowledged Father may have the essentials necessary for Child's physical wellbeing, such as food and shelter, but reasoned that it was necessary to consider Child's best interests in totality. *See id.* The court observed Child has no bond with Father. *See id.*

More significantly, in explaining its decision that no further efforts should be made to reunify Father with Child, the court discussed Father's history of

perpetrating child sexual abuse. It emphasized Father began sexually abusing his sister when she was just a toddler and continued the abuse until she was approximately eleven years old. *See id.* at 16-17. The abuse continued even into Father's adulthood and after he was married. *See id.* at 17. The court observed Father is an SVP, which indicates he is likely to engage in predatory sexually violent offenses, and that he was discharged unsuccessfully from his previous sexual offender treatment provider. *See id.* at 17-18. The court concluded no number of additional services would sufficiently mitigate the risk Child would face in Father's home, commenting, "we are not convinced that placing a child of the same age and gender as Father's prior long-time victim in his home, is in this little girl's best interest." *See id.* at 18-19.

We agree with the juvenile court and conclude Father's contentions are misplaced. First, there is no significant relationship between Father and Child. Father did not know that Child existed until October 2019, when she was eight months old. *See* N.T., 2/9/21, at 191. Once Father discovered Child existed, he visited with her for less than a year.[5] *See id.* at 16, 20-21, 198. Due to the COVID-19 pandemic, which obviously was beyond Father's control, Father spent part of that year receiving only virtual visits, which lasted "10 or 15 minutes." *Id.* at 198. Under the circumstances, even if the court were to find that Father did not pose a threat to Child's safety, it could not simply place

_____

[5] An August 24, 2020, permanency review order indicates Father's visits would be suspended.

Child in Father's custody as he suggests. *In re B.B.*, 745 A.2d 620, 623 (Pa. Super. 1999)(affirming the adjudication of dependency, where the court "determined that the fact that [the appellant] is completely unknown to the children prevents his designation as a proper parental caregiver to them").

Second, while Father is correct Section 6302(1) does not mention SVP status as a relevant factor in determining whether a child is dependent, it is apparent our General Assembly drafted Section 6302(1) to be flexible and to encompass the myriad circumstances that may cause a child to be without proper parental care or control. Indeed, Section 6302(1) does not mention many of the concerns that routinely result in findings of dependency, such as incarceration or a lack of appropriate housing. If a parent is an SVP, that is, a person with a mental abnormality or personality disorder that makes him or her likely to engage in sexually violent offenses, the juvenile court should certainly consider that when assessing the parent's abilities, to ensure it does not place a child in a dangerous environment. We therefor discern no error by the court in its consideration of Father's SVP status in this case.

Regarding the remainder of Father's arguments, he either trivializes or ignores the overwhelming evidence presented at the hearing on February 9, 2021, which confirmed Child remains dependent pursuant to Section 6302(1). As we have summarized, the record indicates Father committed approximately ten years of sexual abuse against his own sister, starting when she was one year old. N.T., 2/9/21, at 22-23, 28-29, 36. Child was two years old at the

time of the hearing, and it was reasonable for the juvenile court to weigh the similarity between Child and Father's prior victim when concluding that placing Child is Father's care would pose a threat to her safety.

Another significant concern at the hearing was Father's recent discharge from his longtime sexual offender treatment provider, FAACT, Inc. Rita Lukas, the president of FAACT, testified Father submits to annual polygraphs due to his SVP status, and that a polygraph on June 11, 2020, indicated dishonesty when Father was asked if he had engaged in sexual contact with a minor since the previous year.[6] ***See id.*** at 92-94, 116-18. FAACT subsequently discharged Father on June 26, 2020. ***See id.*** at 91-92, 119-20.

While the exact reasons and merits of this decision were the subject of much discussion at the hearing, it appears the discharge occurred for several reasons, which included Father's apparent dishonesty on the polygraph; his need for more frequent treatment due to this dishonesty; his significant distance from FAACT, which made more frequent treatment a challenge; and FAACT's rejection of his health insurance. ***See id.*** at 92-95, 109-10. We acknowledge Father testified that he had begun attending treatment at a new provider each week. However, he remained in the preliminary stages of this

---

[6] We acknowledge that the results of the polygraph cannot be used as evidence to establish Father actually engaged in sexual conduct with children in the prior year. However, the results are evidence bearing upon why FAACT discharged Father. ***See Commonwealth v. A.R.***, 80 A.3d 1180, 1183-1184 (Pa. 2013).

- 15 -

transition. Father explained his new provider was still "establish[ing] a future treatment plan[,]" and he had not "gotten to the part of the program where they will review if I get to step down to biweekly or monthly." ***Id.*** at 56, 63. Based on all the foregoing factors, we discern no abuse of discretion in the court's finding that Child remains dependent.

Accordingly, after a thorough review of the record, the juvenile court's opinions, and the parties' briefs, we conclude that Father's claims do not merit relief, and we affirm the court's March 29, 2021, order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/03/2021

- 16 -