J-A13012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 84 MDA 2023 |

Appeal from the Order Entered December 9, 2022
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s): CP-28-DP-0000049-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 85 MDA 2023 |

Appeal from the Order Entered December 9, 2022
In the Court of Common Pleas of Franklin County Juvenile Division at
No(s): CP-28-DP-0000050-2019

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:            **FILED: JULY 25, 2023**

A.K. ("Mother") appeals the December 9, 2022 order finding aggravating circumstances pursuant to 42 Pa.C.S. § 6341(c.1) with respect to Mother's natural daughter, A.D., born in April 2014, and her natural son, D.D., born in

_____

[*] Former Justice specially assigned to the Superior Court.

January 2016. In the same order, the trial court also directed no efforts be made toward reunification with respect to Mother.[1] We affirm.[2]

We glean the factual and procedural history of this matter from the certified record. Franklin County Children and Youth Services ("CYS" or "the agency") have been involved with this family since June 2019, when CYS assumed emergency custody of A.D. and D.D. following allegations of inappropriate contact between A.D. and her paternal grandfather, with whom Father was living at the time. Mother and Father are not married, resided separately, and exercised equally shared custody of A.D. and D.D. in June 2019. Mother resided with her paramour, Jack Wetzel III. Although A.D. and D.D. were declared dependent shortly after the agency's involvement, they were returned to Mother's physical custody in April 2021 and the dependency case was closed in August 2021. Shortly thereafter, Father was incarcerated for driving under the influence. His anticipated release date is in March 2023.

In May 2022,

> the agency sought and was granted emergency protective custody
> of the A.D. and D.D. based on allegations that they had

---

[1] The trial court did not find aggravating circumstances with respect to D.D. ("Father"). In a separate order filed the same day, the trial court changed the respective permanency goals from reunification to adoption. Father has appealed the December 9, 2022 goal change order at 82 and 83 MDA 2023. We address Father's claims in a separate memorandum.

[2] As discussed further *infra*, an order finding aggravated circumstances pursuant to 42 Pa.C.S. § 6341(c.1) is a collateral order that is immediately appealable of right. ***See Interest of A.D.-G.***, 263 A.3d 21, 26 n.4 (Pa.Super. 2021) (citing ***In re R.C.***, 945 A.2d 182, 184 (Pa.Super. 2008)).

insufficiently explained marks and bruises and the school nurse was concerned that the children were not safe. A.D. and D.D. were placed in foster care. A dependency petition was filed alleging the children were without proper parental care or control. A shelter care hearing was held on May 12, 2022, after which they were placed in the legal and physical custody of the agency with placement continuing in foster care.

[A]n adjudicatory hearing took place on June 10 and June 17, 2022, after which . . . the trial court on July 7, 2022, found clear and convincing evidence to substantiate the allegations in the dependency petition. The order in A.D.'s case at CP-28-DP-0000049-2019 states,

> [A.D.] sustained multiple injuries and on multiple occasions while in the care of [Mother and Mr. Wetzel]. The injuries were suggestive of physical abuse and physical neglect. The explanation of the injuries provided by [Mother] was not credible.
>
> [D.D.] also sustained multiple injuries on multiple occasions while in the care of [Mother and Mr. Wetzel]. The injuries were suggestive of physical abuse and physical neglect. The explanation of the injuries provided by [Mother] was not credible.
>
> [A.D.] has a significant history of psychological impairment as does [D.D.] Parents did not arrange necessary counseling services for [A.D. or D.D.] while they were in the care of [Mother and Mr. Wetzel].

Order, 7/5/22. A similar finding was made by order the same date in D.D.'s case at CP-28-0000050-2019. In both cases, the permanency goal was set at reunification.

The agency filed its motion for a finding of aggravated circumstances on July 22, 2022, solely as to Mother[.]

. . . .

A motion to admit out-of-court statements made by A.D. and D.D. pursuant to 42 Pa.C.S. § 5985.1 was filed by the agency on September 19, 2022, seeking the admission of the children's statements to . . . a forensic interviewer at Over the Rainbow

- 3 -

Children's Advocacy Center ("CAC"). The trial court held a hearing on that motion on October 11, 2022. Thereafter, the trial court . . . permitted the children's statements . . . to be admitted at the hearing . . ., under what is commonly referred to as the "tender years" exception to the rule against hearsay. In reaching this determination, the court found the children were "unavailable" pursuant to [Sections 5985.1(a)(1)(ii)(B) and (a.1) due to emotional distress.]

On December 6 and 8, 2022, the trial court conducted a joint evidentiary hearing on the agency's aggravated circumstances and goal change petitions.

Trial Court Opinion, 2/2/23, at 2-4 (cleaned up).

On December 9, 2022, the trial court entered orders finding that the agency had sufficiently established the requisite aggravating circumstances pursuant to § 6341(c.1) and directing no efforts be made to reunify Mother with A.D. or D.D. The same day, the trial court entered separate orders changing the respective permanency goals from reunification to adoption.

On January 9, 2023, Mother filed timely notices of appeal from the aggravated circumstances orders along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3] The trial court filed a responsive Rule 1925(a)(2)(ii) opinion. Thereafter, this Court granted leave for Mother to file amended concise statements after new counsel was appointed to represent her on appeal and she timely complied.

_____

[3] Mother's thirty-day window to appeal technically expired on January 8, 2023. *See* Pa.R.A.P. 903(a). Since that day fell on a Sunday, however, it must be omitted from the time computation. *See* 1 Pa.C.S. § 1908. Accordingly, Mother's January 9, 2023 notices of appeal were timely filed.

Thereafter, the trial court submitted a supplemental Rule 1925(a)(2)(ii) opinion. Finally, this Court consolidated the above-captioned cases *sua sponte* pursuant to Pa.R.A.P. 513. Mother has raised the following issues in her brief:

1) Did the court err by changing the permanency goal from reunification to adoption as same was not supported by clear and convincing evidence, a standard that requires "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue?"

2) Did the court improvidently determine aggravated circumstances existed based on the conduct of another and not the parent?

3) Did the court base its determination on inadmissible hearsay?

4) Was Mother prevented from testifying at the hearing by her own counsel, and the court did not properly *voir dire* Mother as to the voluntary nature of her alleged decision not to testify?

Mother's brief at 3.[4] We will address each of these claims *seriatim*.

Our pertinent standard of review requires that we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." **In re L.V.**, 127 A.3d 831, 834 (Pa.Super. 2015) (cleaned up). Thus, we review the trial court's finding of aggravated circumstances for an abuse of discretion. **See id**.

---

[4] The guardian *ad litem* filed a letter with this Court stating its intent to rely on the trial court opinion in lieu of a brief in these appeals.

As noted above, the basic legal foundation of aggravated circumstances allegations is § 6341(c.1), which provides as follows:

> **(c.1) Aggravated circumstances.**—If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

42 Pa.C.S. § 6341(c.1). "Clear and convincing evidence" is "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Interest of R.C.-G.*, 292 A.3d 582, 588 (Pa.Super. 2023).

The operative definitions of "aggravated circumstances" and other related terms of art are set forth at 42 Pa.C.S. § 6302, which provides, in pertinent part, as follows:

> The following words and phrases when used in this chapter shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:
>
> . . . .
>
> **"Aggravated circumstances."** Any of the following circumstances:
>
> . . . .
>
> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily

> injury, sexual violence or aggravated physical neglect by the parent.
>
> . . . .
>
> **"Aggravated physical neglect."** Any omission in the care of a child which results in a life-threatening condition or seriously impairs the child's function.

42 Pa.C.S. § 6302. Our precedent provides that we "'need not find the existence of aggravated circumstances as to a particular party; rather, it merely must determine whether they are present in the case.'" *L.V.*, *supra* at 838 (quoting *In re R.P.*, 957 A.2d 1205, 1219 (Pa.Super. 2008)). Furthermore, we remain mindful that "[t]he focus of dependency proceedings is on the child. Safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents." *Interest of S.U.*, 204 A.3d 949, 965 (Pa.Super. 2019).

With these precepts in mind, we turn to Mother's first issue, which implicates the trial court's permanency goal change findings and orders. *See* Mother's brief at 6-8 (baldly reciting the legal standards attendant to permanency goal change orders and discussing various testimonies adduced at the underlying hearings). We emphasize that the above-captioned appeals lie solely from the trial court's December 9, 2022 aggravated circumstances orders. *See* Notice of Appeal at CP-28-DP-0000049-2019, 1/9/23, at 1; Notice of Appeal at CP-28-DP-0000050-2019, 1/9/23, at 1. Critically, Mother did not file separate notices of appeal with respect to the permanency goal change orders entered on the same day. Mother does not acknowledge or

address this concern, although the brief submitted by CYS does make note of this irregularity. *See* CYS's brief at 8 n.2.

Our case law provides that an order finding aggravated circumstances pursuant to § 6341(c.1) of the Juvenile Act, 42 Pa.C.S. §§ 6301-75, is a collateral order that is immediately appealable of right pursuant to Pennsylvania Rule of Appellate Procedure 313(b). ***See Interest of A.D.-G.***, 263 A.3d 21, 26 n.4 (Pa.Super. 2021) (citing ***In re R.C.***, 945 A.2d 182, 184 (Pa.Super. 2008)). Under this doctrine, "only that portion of the order that is collateral is subject to collateral review." ***Rhodes v. USAA Cas. Ins. Co.***, 21 A.3d 1253, 1259 (Pa.Super. 2011) (emphasis added). Furthermore, this Court has "rejected a 'whole order approach' to the collateral order doctrine permitting appellate review of all issues surrounding a collateral order[.]" ***Id***. (citing ***Rae v. Pa. Funeral Directors Assoc.***, 977 A.2d 1121, 1130 (Pa. 2009)). Accordingly, we must reject any attempt by Mother to obtain review of matters beyond the scope of the trial court's aggravated circumstances orders. To the extent that Mother raises arguments implicating the findings in the permanency goal change orders, such claims are not properly before this Court since they exceed the scope of the aggravated circumstances orders. ***Accord Rhodes***, ***supra*** at 1259; ***R.C.***, ***supra*** at 184. Thus, as a matter of justiciability, we cannot address Mother's first claim for relief.

Turning to Mother's second issue, we discern that she intends to challenge the trial court's finding of aggravated circumstances pursuant to

§ 6341(c.1). Specifically, she asserts that "[t]he facts of this case do not suggest that [Mother] knew of and failed to prevent any acts of abuse perpetrated on her children." Mother's brief at 9. Mother's argument on this point focuses upon 23 Pa.C.S. § 6381(d), which provides that "[e]vidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent . . . of the child shall be *prima facie* evidence of child abuse by the parent[.]" Our case law recognizes that this statute creates a rebuttable presumption of child abuse. **See Interest of G.R.**, 282 A.3d 376, 381-82 (Pa.Super. 2022). However, we are perplexed by Mother's invocation of this statute, which is neither cited nor relied upon by the trial court. Contrary to Mother's specious arguments, the trial court's findings regarding aggravated circumstances are not predicated upon any evidentiary presumption, but direct evidence.

The testimony adduced at the hearing is revealing. Trisha Goshorn, the nurse at A.D. and D.D.'s elementary school, explained that she first raised concerns with CYS after observing increasingly serious injuries to A.D. and D.D. during May 2022. Between May 3 and May 9, 2022, A.D. presented to Ms. Goshorn on nine different occasions with troubling injuries, including significant fresh and old bruising, scratches, swelling, and "hand marks to her neck[.]" N.T., 12/6/22, at 8-17. A.D. disclosed that "sometimes [Mother] moves her face or jaw whenever she wants her to look at her or to get her attention." *Id*. at 18. Separately, D.D. visited Ms. Goshorn on May 3, 2022,

concerning an abrasion to his left elbow. *Id*. at 22. Six days later, D.D. returned to Ms. Goshorn's office with "purplish skin discoloration to his right eye" and petechia under his right eye, which injuries were not present during his earlier visit. *Id*. at 23-24.

As noted by CYS intake caseworker Rushele Wingert, these injuries provoked a number of agency referrals that resulted in a recommendation that A.D. and D.D. both undergo forensic interviews. *Id*. at 120-25. A.D. and D.D. underwent forensic examinations at CAC on May 11, 2022, which was performed by nurse Brandi Castro. She noted "bruising, marks, or redness on A.D.'s face, head shoulders, legs, back, buttocks, and pubic area, as well as bruising, marks, or redness on D.D.'s face, genitals, legs, hips, legs, and buttocks." Trial Court Opinion, 2/2/23, at 11 (citing N.T., 12/6/22, at 86). Dr. Kathryn Crowell, an expert in child abuse pediatrics, also testified that the nature and extent of these injuries were indicative of physical abuse, rather than accidental causes. *See* N.T., 12/6/22, at 99-103. Furthermore, she found the injuries were very painful, would have created difficulties in concentrating and sitting, and may have provoked behavioral changes in A.D. and D.D. *Id*. at 109-12. Ms. Wingert also testified concerning the forensic interviews of A.D. and D.D., wherein they independently disclosed that Mother and Mr. Wetzel were causing their injuries. *Id*. at 129-30.

After viewing recordings of these interviews, the trial court offered this summary of the respective testimonies:

- 10 -

Both children disclosed that they were physically disciplined by [Mr.] Wetzel and [Mother]. D.D. described being hit in his genitals and other locations on his body. He described being punished by being made to stand in a corner for hours at a time – sometimes an entire day because he "did bad stuff." [He] described being hit with a belt and with his clothes off. He said they did the same thing to A.D. D.D. described that [Mother] was in the room when [Mr. Wetzel] hit him.

A.D. told the interviewer that she didn't [want to] live with [Mother] and [Mr. Wetzel] because "they were abusing us." A.D. described being hit and made to stand in timeout for hours. [A.D. and D.D.] were required to eat breakfast and lunch in timeout and could not get out of timeout unless they stood still, but their legs got so numb that they had to move, so they couldn't get out of timeout. [A.D.] described being hit on the face with bare hands, on the "but" with a belt and bare hands, and on the arms and legs with bare hands. A.D. went to the nurse for ice because it hurt badly. A.D. described that [Mr. Wetzel] hurt D.D. [She averred that Mother] hit her on her face, nose, arms, and legs. A.D. told the interviewer that she was afraid to tell anyone because [Mother and Mr. Wetzel] said they would "beat their butts" if they told. A.D. told the interviewer that she got the bruise near her [pubic area] from [Mother] punching her with her clothes on.[5]

Trial Court Opinion, 2/2/23, at 15-16.

Finally, CYS caseworker Gayle Schreiber testified regarding, *inter alia*, the mental health of the children. D.D.'s first such evaluation in 2019 "'resulted in a diagnosis of [an] adjustment disorder with mixed disturbance

---

[5] No transcript of these interviews appears in the certified record and Mother did not request preparation of any such materials. **See** Trial Court Opinion, 2/2/23, at 30. Although the absence of these transcripts does not appear to have adversely affected these proceedings, we note our case law is clear that "the appellant bears the responsibility to ensure that a complete record is produced for appeal." **Dressler Family, LP v. PennEnergy Resources, LLC**, 276 A.3d 729, 733 n.8 (Pa.Super. 2022). No party disputes the trial court's summary of the testimonies adduced from A.D. and D.D.

of emotions and conduct and personal history of psychological trauma.'" N.T., 12/8/22, at 31. A.D. was similarly diagnosed with an "'adjustment disorder with mixed anxiety and depressed mood'" and posttraumatic stress disorder. *Id*. at 33. Thereafter, D.D.'s updated psychiatric evaluation in 2022 resulted in "diagnoses of 'unspecific trauma and stressor related disorder, attention deficit hyperactivity disorder, intermittent explosive disorder, oppositional defiant disorder,'" and suspected reactive attachment disorder. *Id*. at 36.

Despite these troubling diagnoses, Ms. Schreiber noted A.D. had not been properly enrolled in mental health treatment since being returned to Mother's custody. *Id*. at 33-35. Finally, Ms. Schreiber also reported that A.D. and D.D. are mutually "scared to death" of Mother, such that the agency opposed the notion of even conducting a bond assessment. *Id*. at 45.

With this testimony in mind, the trial court articulated the rationale for its finding of aggravated circumstances, as follows:

> [T]he uncontradicted testimony of each of the agency's witnesses established that the children were subjected to repeated beatings at the hands of Mother and Mr. Wetzel. At times, the children were beaten by Mother; at times they were beaten by Mr. Wetzel while Mother was in the room and aware. There was absolutely no evidence presented that Mother was unaware of the beating by Mr. Wetzel or that she attempted to stop him from hurting her children.
>
> The trial court found credible the way in which this case came to light. Elementary school personnel observed marks and bruising on the children on multiple occasions and for which there were insufficient explanations. The court found [Ms. Goshorn], the school nurse, to be a credible witness. We also found Ms. Wingert, the intake caseworker, who performed the initial investigation on behalf of the agency, to be a credible witness.

- 12 -

The children described the painful beatings they sustained by Mother and Mr. Wetzel in individual forensic interviews on two different dates at the CAC. The children responded to open-ended, non-leading questions in their forensic interviews. Their statements were not equivocal, confused, or inconsistent; however, each told their story in their own way and did not lead the court to find that their statements were practiced, rehearsed, or coached. . . .

We further found the children's recorded interviews to be credible based on the children's age-appropriate language and demeanor and accorded this evidence great weight.

[Ms.] Castro's testimony regarding her forensic examination of each child and her findings was also given substantial weight. The photographs of each child's injuries, specifically, the significant marks and bruising in areas like the children's faces and genitals – were particularly troubling and important to our determination that the children were subjected to, at a minimum, aggravated physical neglect by Mother.

We also placed great weight on the expert testimony of [Dr. Crowell] who opined, in summary, that the children were subjected to non-accidental injury based on the location and pattern of the marks and bruises. . . .

In addition to the physical abuse suffered by A.D. and D.D., Mother's termination of the children's important and necessary mental health services seriously impaired their functioning. Each of the children was evaluated and diagnosed with significant mental health issues when they were in the agency's legal and physical custody from June 2019 until they were returned to Mother's physical custody in April 2021 and legal custody in August 2021. At that time, the children were actively participating with mental health professionals addressing their mental health needs. The agency believed Mother would continue those services when the children were returned to her legal custody. She failed to do so. There is no evidence to the contrary.

Trial Court Opinion, 2/2/23, at 27-29.

There is no indication that the trial court was forced to rely upon a legal presumption pursuant to § 6381(d) in this matter. To the contrary, the evidence detailed above readily established that Mother, *inter alia*: (1) directly participated in the physical abuse of both A.D. and D.D.; (2) failed to intercede when Mr. Wetzel assaulted A.D. and D.D.; and (3) neglected to obtain appropriate medical attention for either child. Furthermore, Mother failed to enroll A.D. in recommended mental health services.

We re-emphasize that a court "'need not find the existence of aggravated circumstances as to a particular party; rather, it merely must determine whether they are present in the case.'" **L.V.**, **supra** at 838 (quoting **R.P.**, **supra** at 1219). Overall, there was clear and convincing evidence of Mother's aggravated physical neglect with respect to both A.D. and D.D., *i.e.*, an omission in their care that seriously impaired their function. **See** 42 Pa.C.S. § 6302. In addition to the obvious physical pain and mental anguish associated with the injuries inflicted upon A.D. and D.D. by Mother, Dr. Crowell testified that the "emotional trauma" associated with these violent events could result in the "serious impairment" of A.D. and D.D. N.T., 12/6/22, at 113. The troubling and voluminous mental health diagnoses ascribed to A.D. and D.D. at the respective ages of eight and six years old are highly corroborative of this concern. The testimony from Ms. Schreiber reflects that D.D. deteriorated significantly after being returned to Mother's custody, while A.D. was denied appropriate therapy. **See** N.T., 12/8/22, at 31-36. We

- 14 -

observe no abuse of discretion or error law in finding that A.D. and D.D. have suffered "serious impairment" as a result of Mother's aggravated physical neglect. No relief is due with respect to Mother's second claim.

In Mother's third issue, she alleges that the trial court's holding was predicated upon inadmissible hearsay adduced from Ms. Goshorn and Dr. Crowell.[6] **See** Mother's brief at 10 (citing Pa.R.E. 802 ("The Rule Against Hearsay")). Specifically, Mother has noted several points in the transcripts where this alleged hearsay was entered into the record. **See** N.T., 12/6/22, at 12, 16, 24, 119, 123-24, 129-30. Assuming, *arguendo*, these statements constitute hearsay, our review reveals that Mother failed to lodge any contemporaneous objection in the trial court regarding these statements. **Id**.

It is beyond cavil that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Indeed, this Court has discussed the necessity of timely objections, as follows:

> In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction one must object to errors, improprieties[,] or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

---

[6] Mother's brief contains no mention of the trial court's admission of A.D.'s and D.D.'s forensic interview testimonies as an exception to hearsay.

*Interest of N.B.*, 260 A.3d 236, 243 (Pa.Super. 2021). Instantly, Mother's failure to assert timely objections to these alleged instances of hearsay results in waiver of these claims on appeal. *Id*.; *see also* Pa.R.A.P. 302(a).

In Mother's fourth claim, she asserts two related-but-separate claims, namely, that: (1) her prior counsel "prevented" her from testifying at the hearing; and (2) this Court should mandate that trial courts must conduct voluntariness colloquies in dependency proceedings. Mother's brief at 11 ("[T]here is a paucity of information in the record as to whether [Mother] was aware or understood her right to testify." (cleaned up)).

As to the first aspect of this issue, Mother is essentially asserting that prior counsel was ineffective. *Id*. ("[T]he decision of whether to testify in one's own behalf is ultimately to be made by the accused after full consultation with counsel. The record is replete [sic] of whether any such consultation with counsel occurred." (cleaned up)). The transcripts confirm that Mother declined to testify on the advice of counsel.[7] *See* N.T., 12/8/22, at 76.

Mother is statutorily entitled to representation by counsel in these dependency proceedings pursuant to 42 Pa.C.S. § 6337, which "has also been expressed as a right to effective assistance of counsel, such that the denial of effective assistance is tantamount to having proceeded with no counsel at all." *In re N.B.*, 817 A.2d 530, 535 (Pa.Super. 2003). Mother is also entitled "to

---

[7] Mother is facing multiple criminal charges in connection with these events and faces possible incarceration if convicted. *See* N.T., 12/8/22, at 39-40.

the opportunity to introduce evidence and otherwise be heard in [her] own behalf[.]" 42 Pa.C.S. § 6338(a). However, a party alleging ineffectiveness in the context of dependency proceedings "must make a **strong showing** of ineffectiveness of counsel" by coming forward "with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel," the results of the proceeding would have been different.[8] *In re S.M.*, 614 A.2d 312, 315-16 (Pa.Super. 1992) (emphasis in original); *see also Interest of A.G.*, 273 A.3d 1013 (Pa.Super. 2022) (unpublished memorandum at 8-9) (same). Finally, "the law presumes that counsel was effective and the burden of proving that this presumption is false rests with the petitioner." *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009).

Instantly, Mother's bald allegations are insufficient to sustain her burden to make a "strong showing" with respect to her claims of ineffectiveness. In sum, she has offered no discussion whatsoever of the critical testimony she would have offered if counsel had not advised her to remain silent, nor has she offered any argument concerning how such information would have altered the trial court's holding. Beyond innuendo, Mother has proffered no evidence or specific allegations in support of her ineffectiveness claims. Such threadbare arguments lack merit. *See S.M.*, *supra* at 315-16.

---

[8] *But see In re K.D.*, 871 A.2d 823, 828 (Pa.Super. 2005) (acknowledging the precedential value of *In re S.M.*, 614 A.2d 312 (Pa.Super. 1992) while questioning "under what authority our Court announced a new and heightened standard of review" as to ineffectiveness in dependency proceedings.).

Mother's second related argument suggests we adopt a new colloquy rule with respect to dependency proceedings. In support of her position, Mother has cited largely inapposite federal and state criminal law holdings. *See* Mother's brief at 11. We emphasize that her arguments do **not** allege that her decision to testify was unknowing, unintelligent, or involuntary in any particular fashion. Rather, she alleges only that the absence of a colloquy creates an untenable ambiguity in the record. *Id*. at 11 ("Herein, there is a paucity of information in the record as to whether [Mother] was aware of and/or understood her right to testify." (cleaned up)).

Assuming, *arguendo*, that the specific legal principles concerning a criminal defendant's right to testify in their own defense are relevant to the instant dependency proceedings, Mother's preoccupation with the lack of a colloquy in this matter is misplaced. As this Court has explained, "[a] trial court is **not** required to conduct a colloquy to determine whether a defendant has made a knowing, intelligent and voluntary waiver of [her] right to testify." ***Commonwealth v. Washington***, 269 A.3d 1255, 1264 (Pa.Super. 2022) (emphasis added). The colloquy is merely a "useful procedural tool" that "does not share the same status as the right itself." *Id*. at 1264 n.2. In the absence of a colloquy, a trial court may instead rely upon "the presumed competent advice of counsel" to confirm a valid waiver of the right to testify. *Id*. at 1264. Thus, to the extent that Mother claims that a colloquy is mandated pursuant to Pennsylvania law, she is mistaken.

Furthermore, we reject Mother's insinuation that the record is ambiguous as to whether she conferred with counsel concerning her decision not to testify. As noted above, Mother's counsel stated on the record that Mother was declining to testify upon the advice of her counsel. **See** N.T., 12/8/22, at 76 ("On the advice of counsel my client will not be testifying today."). Mother was present at the time this statement was made and offered no objection. **Id**. Even before this Court, Mother continues to remain silent regarding this crucial fact. Counsel's advice is presumed to be effective under Pennsylvania law and Mother has offered no salient argument in rebuttal. **See Cox**, **supra** at 678. Instead, she focuses exclusively upon the trial court's supposed failure to conduct an unnecessary procedure.

Based upon the foregoing, we respectfully decline Mother's invitation to announce a new procedural requirement under our dependency law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/25/2023

- 19 -