J-S11016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.G. AND A.T., PARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1364 WDA 2024 |

Appeal from the Order Entered October 17, 2024
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-DP-0000410-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: E.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.G. AND A.T., PARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1389 WDA 2024 |

Appeal from the Order Entered October 17, 2024
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-DP-0000409-2024

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                    **FILED: June 30, 2025**

Appellants, N.G. ("Father") and A.T. ("Mother") (collectively "Parents"), appeal from the dispositional order entered in the Allegheny County Court of Pleas, which adjudicated Mother's minor child, E.T., and Parents' minor child, E.G., dependent.  We vacate and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. The Allegheny County Office of Children, Youth and Families ("CYF") was

granted emergency protective custody of E.T. and E.G. on August 2, 2024, based on events that transpired at UPMC Magee-Women's Hospital, where Mother had given birth to E.G. On August 7, 2024, the court conducted a shelter care hearing and ordered that J.T. ("Maternal Grandmother") be assessed for kinship placement for the children. The court further scheduled an adjudicatory hearing to take place on August 28, 2024 at 9:30 a.m.

On August 28, 2024, Parents arrived late for the hearing and the court proceeded to hear another matter. At 11:30 a.m., the court convened the parties for a status update.[1] CYF represented to the court that some of their witnesses were no longer available and requested a continuance. Parents objected to continuing the hearing because the children had been removed from their care. The court noted that Maternal Grandmother, who had partial custody of E.T., had requested counsel but had not yet been appointed counsel. The court stated that it would hear the testimony of the witnesses that were available, specifically as to the reasons for the removal of the children, and continue the full adjudicatory hearing to a later date to allow the presentation of additional evidence.

Rhianna Diana, a CYF case worker, testified that this case was referred to CYF based on reports from Magee-Women's Hospital. The hospital staff reported that I.V. supplies were missing from Mother's labor and delivery room. Hospital staff further raised concerns over Father's appearance, noting

---

[1] The record does not disclose what time Parents arrived at the hearing.

that he was nodding off. Mother yelled at Father to wake up and take E.T., who was four years old at the time, to daycare. Hospital staff raised concerns about Father's ability to safely drive E.T. to daycare but Father left the hospital with E.T. When Ms. Diana responded to the hospital to investigate the report, Father and E.T. were not present at the hospital. Ms. Diana spoke with Mother, who stated that she had a criminal history and a history of drug and alcohol abuse, but she had been sober for a year. Ms. Diana testified that Mother did not appear to be under the influence of drugs or alcohol during their interactions. Ms. Diana further testified that Mother was very forthcoming and cooperative at times but would also become upset and verbally aggressive at other times.

When Ms. Diana inquired about Father, Mother informed her that she and Father lived together and denied that Father had a substance abuse problem. Ms. Diana informed Mother that she needed to assess Father before the children could be released into their care. Father refused to return to the hospital room and the phone conversations between Mother and Father became increasingly aggressive as time went on. Mother also began to be more verbally aggressive towards Ms. Diana. After a few hours of being unable to assess Father to assure safety of the children in his care and due to the escalation of conflict between Parents, Ms. Diana sought emergency

protective custody of the children.[2]  Mother attempted to leave the hospital with E.T. but was prevented from doing so.  After the children were in CYF's custody, Ms. Diana called Mother to inform her that Maternal Grandmother had not been cleared as a kinship placement for the children.  During this phone conversation, Mother told Ms. Diana that she was going to find out where Ms. Diana lived and shoot her in front of her family.

Officer James Vogel testified that he is the police supervisory lieutenant at Magee-Women's Hospital.  He was assigned to standby at Mother's labor and delivery room when CYF became involved.  Mother and Father were having a heated argument on the phone regarding Father's refusal to return to the hospital.  In an attempt to deescalate the situation, Officer Vogel spoke with Father on the phone and asked him to return to the hospital.  Father refused to comply.  Mother became very upset when Ms. Diana informed her of the emergency protective custody order.  Mother knocked the papers out of Ms. Diana's hand when she attempted to give them to Mother.  Officer Vogel stepped in at this point to ensure there was no physical violence.  Following this, Mother was yelling, using threatening language, and physically postering.  Nevertheless, Officer Vogel testified Mother did not exhibit any physically violent behavior and he did not believe Ms. Diana was in physical jeopardy

_____

[2] While Ms. Diana was at the hospital waiting with Mother, Mother informed Ms. Diana that Father had returned to the hospital premises with E.T. and a car seat for E.G.  Mother, with Ms. Diana's knowledge, left her room and met with Father to retrieve E.T. and the car seat.  Nevertheless, Father did not return to the room with Mother to speak with Ms. Diana.

during this interaction. At one point, Mother attempted to leave the hospital before she was cleared, and Officer Vogel prevented her from doing so.

Emily Hurley, a CYF caseworker, testified that she supervised one visit between Parents and the children. During this visit, Father appeared sleepy. When Ms. Hurley inquired about it, Father stated that he had been working late and Mother reported that Father was prescribed Lorazepam, which makes him sleepy. Approximately 30 minutes before the visit was set to end, Father left the room to use the bathroom. Father did not return to the visit after this. Ms. Hurley testified that she has no reason to suspect that Mother is abusing drugs or alcohol. Parents underwent an assessment for drug and alcohol treatment and accepted the recommendation for outpatient co-occurring treatment with the psychiatrist they were already seeing. Father further indicated that he goes to Jade Wellness for medication assisted treatment. Parents also signed releases for medical information. Ms. Hurley further testified that she assessed Parents' home and found it to be safe and appropriate.

CYF indicated that it intended to call two additional witnesses that were not present at the hearing in support of its request to adjudicate the children dependent.[3] The court then inquired whether Parents wished to present any

---

[3] It is unclear from the record whether any of the additional witnesses CYF intended to call at the continued hearing were unavailable at the August 28th hearing due to Parents' tardiness. One of the witnesses that CYF identified as

*(Footnote Continued Next Page)*

witnesses at that time, and Parents' attorney stated that Parents would wait until CYF rested to present their case. Thereafter, the court continued the remainder of the adjudication hearing to a later date. In the interim, the court ordered that E.T. be returned to Mother's custody and E.G. be returned to Parents' custody. The court further ordered Parents to continue to cooperate with CYF and ordered Father not to drive with the children. The court subsequently scheduled the remainder of the adjudicatory hearing to take place on October 2, 2024.

On August 30, 2024, CYF filed another petition for emergency protective custody, noting that an investigator recorded a video of Father leaving Parents' shared residence, driving to a convenience store, using I.V. drugs in the car, and driving away erratically. The petition further stated that there was period of time earlier that day when Father was left alone as the sole caregiver for E.G. The court then granted emergency protective custody to

_____

unavailable due to Parents' tardiness was Ms. Diana, who CYF was able to retrieve in time to provide testimony.

CYF represented to the court that one of the two additional witnesses they intended to call at the continued hearing was a social worker from UPMC Magee-Women's hospital. CYF reported that she had been subpoenaed but was on vacation when the subpoena was served; and CYF did not learn that she was unavailable until that afternoon.

The second witness that CYF intended to call at the continued hearing was from Jade Wellness. This witness had not been subpoenaed for the August 28th hearing because CYF only received the relevant report from Jade Wellness the previous night.

CYF, and the children were removed from Parents' care and placed in kinship placement with Maternal Grandmother.

On September 6, 2024, the court conducted a shelter care hearing. At the hearing, Parents' counsel stipulated that the video recorded by CYF depicted Father in a vehicle with a needle and a bag with an unknown white substance in it. At the conclusion of the hearing, the court ordered that the children remain in kinship placement with Maternal Grandmother.

On September 13, 2024, the court *sua sponte* entered an order titled "Order of Adjudication," which states in relevant part:

> [T]his court concludes that the testimony from the 8/28 hearing date, the [c]ourt's observations of [Father] on that date, and the stipulated content of the video discussed at the shelter hearing collectively establish that the children are dependent.
>
> THEREFORE, the [c]ourt hereby adjudicates [E.T.] and [E.G.] dependent, pursuant to subsection 1 of the definition of "dependent child." 42 Pa.C.S.A. § 6302.
>
> The [c]ourt DEFERS disposition to the previously scheduled date of October 2, 2024 at 1:30 pm, when the [c]ourt will conduct a dispositional hearing.
>
> Pending dispositional hearing, the Shelter Care order controls the [children's] placement and Parents' visitation.
>
> At the dispositional hearing, the [c]ourt will hear any evidence and testimony that either Parent wishes to present, including any evidence they desired to present in the adjudicatory portion of the hearing.
>
> The [c]ourt will enter a full Order of Adjudication and Disposition upon completion of the dispositional hearing.

(Order of Adjudication, filed 9/13/24, at 1-2) (unpaginated).

On October 2, 2024, the court conducted the dispositional hearing. The court began the hearing by summarizing the proceedings that had already taken place. In explaining its order of adjudication, the court stated:

> I entered the Shelter Care Order, and then reviewing everything available to me at that point, the testimony that I heard on August 28th, the observations that I made that day of [Father's] demeanor and conduct, and the stipulation that was accepted by the Hearing Officer at the time of the shelter hearing, I determined that the evidence was sufficient to support an adjudication.
>
> And so because I was going to be out of the country for the next several weeks, I believed it important that the participants in this case know what my assessment of the evidence was that I directly heard, plus stipulated evidence, what my conclusion was based on that.
>
> So I issued an order that I called and intended as an Order of Adjudication.
>
> *     *     *
>
> But I issued an order that day, September 13th. And given that I had made a decision that the evidence that I heard supported adjudication, I characterized today's hearing as a Dispositional Hearing.
>
> Now, on August 28th, although, of course, [Mother] and [Father], I gave [your counsel] the opportunity to present any testimony from you, he chose not to, which was fine, because CYF hadn't completed the presentation of their evidence. So I didn't hear from you that day. And there may be things that you want me to know that you think would cause me to change my mind, and I haven't heard those things yet. If that is the case, I will hear those things today.
>
> But as things stand right now, CYF has met its burden. I've adjudicated the children dependent.

…[W]e will proceed with the hearing where, what my intention was … if [Parents] wished me to reconsider the actual adjudication, I would hear their evidence first. You could present any rebuttal evidence that you might wish to.

(N.T. Dispositional Hearing, 10/2/24, at 7-10).

Parents then submitted a motion requesting that the judge recuse herself. Parents' counsel noted their strong objection to the court's entry of the adjudication order without proper notice or allowing Parents an opportunity to be heard. Counsel argued that the court violated Parents' due process rights by adjudicating the children dependent before Parents were afforded an opportunity to present any evidence in opposition. Counsel further objected to the court's reliance on a stipulation that was entered for the purpose of a shelter care hearing, which has a more relaxed evidentiary standard than an adjudicatory hearing. The court denied Parents' recusal motion. Thereafter, the following exchange took place:

THE COURT: [O]bviously CYF has other witnesses here today. If you would prefer that I hear from those witnesses before I hear from your clients, or any witnesses that you wish to present, I am more than happy to require [CYF] to proceed with [its] witnesses first.

[PARENTS' COUNSEL]: I guess my question is, are we doing an adjudication hearing or disposition hearing? I'm not clear on what the purpose of us calling witnesses is for.

THE COURT: Well, … my thought was that you might wish me to vacate my Order of Adjudication, and I am open to doing so if evidence is presented that causes me to think that I should.

[PARENTS' COUNSEL]: As far as the motion, I think the [c]ourt made its ruling. We believe that all parties believe

we are here for a dispositional hearing, so — there was no notice that we are here for an adjudication. The order did say that if there was evidence that we wanted to present at adjudication, I'll consider for it a dispositional hearing. So we are not here for an adjudication.

I'm going to ask the [c]ourt to reopen the record. We'll just take necessary steps from here. So we can go forth with the hearing.

[THE COURT]: Just to be clear, you are turning down the opportunity for me to consider vacating my adjudicatory order?

[PARENTS' COUNSEL]: What I'm saying is, we are not prepared for that. … We prepared for a dispositional hearing. And you have [a] right to have notice of an adjudication hearing. Every case law says that.

We didn't get notice. We are not here for that. So I'm not prepared to go forward. I haven't prepped my clients. I haven't talked to them about an adjudication, because the order didn't specify that.

THE COURT: Would you like a continuance so that you can prepare your clients to present anything that you wish me to consider related to an adjudication?

[PARENTS' COUNSEL]: I think, I believe, the [c]ourt's order is already final. The [c]ourt's order is final.

THE COURT: Actually, … I have a different view regarding that. It is not a final order. There isn't a final order until there is an order of adjudication and disposition entered, which there has not been. So the order is not final. And I, once again, in my view, would not have entered it in this way if I thought that it was. And I will ask you, again, would you like a continuance to have the opportunity to properly prepare your clients and present anything you wish me to consider in support of vacating the order of adjudication that I entered?

[PARENTS' COUNSEL]: If the [c]ourt is going to *sua sponte* vacate its own order, then at that point we request a

continuance. I'm not making that motion.

> THE COURT: Fine. Then the children are adjudicated dependent and we will proceed with a dispositional hearing.

(***Id.*** at 18-21).

On October 17, 2024, the court entered an order of adjudication and disposition, determining that both children were to remain in kinship placement with Maternal Grandmother. On November 5, 2024, Parents filed notices of appeal and contemporaneous concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), at each underlying docket concerning each child.

Parents raise the following issues for our review:

> Did the trial court err in *sua sponte* adjudicating the minor children dependent without a full hearing?

> Did the trial court violate [Parents'] due process rights by adjudicating the minor children dependent without an opportunity to be heard and present evidence on their own behalf?

> Did the trial court err when it denied [Parents'] motion to recuse itself from further proceedings in light of the September 13, 2024 order?

(Parents' Brief at 9).

In their first two issues combined, Parents argue that the court violated their due process rights by adjudicating the children dependent without conducting a full hearing. Parents assert that due to the court's decision on August 28, 2024, to continue the full adjudicatory hearing to a later date to allow CYF to present additional witnesses, Parents elected to wait to present

- 11 -

their case until after CYF rested. Parents contend that the court subsequently adjudicated the children dependent prior to holding the continued portion of the hearing, which deprived Parents of an opportunity to be heard. Parents claim that the court adjudicated the children dependent based on a stipulation that was entered for the purposes of a shelter care hearing, but that such stipulation was not binding for purposes of the adjudicatory hearing. Parents insist that the court's invitation for Parents to move to vacate the adjudicatory order at the October 2, 2024 hearing was insufficient to cure the due process violation because the court required Parents to first put forth evidence to convince the court that the record should be reopened. Parents conclude that the court adjudicated the children dependent in violation of Parents' due process right to be heard and confront the evidence against them, and this Court should vacate the order of adjudication. We agree.

The applicable scope and standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the [trial] court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)).

The Juvenile Act defines a dependent child, in pertinent part, as follows:

### § 6302. Definitions

- 12 -

\* \* \*

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his [or her] physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

"The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." **In re E.B.**, 83 A.3d 426, 431 (Pa.Super. 2013). In a dependency proceeding, "[a] party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-examine witnesses." 42 Pa.C.S.A. § 6338. Further:

The court in a dependency proceeding must conduct a comprehensive and searching inquiry into the record, taking evidence from all interested parties and also from objective, disinterested witnesses. This is so because the utmost concern is for the children's welfare. If the hearing judge does not comply with these requirements, on appeal the case will be remanded for further proceedings.

**Int. of J.R.**, 333 A.3d 446, 452 (Pa.Super. 2025) (internal citations and quotation marks omitted).

Additionally, "[a] parent has the right to due process in any dependency case involving his or her child." **Int. of A.D.-G.**, 263 A.3d 21, 27 (Pa.Super.

- 13 -

2021), *appeal denied*, ___ Pa. ___, 266 A.3d 449 (2021). "In dependency cases, this Court has held due process is satisfied where the party is afforded sufficient notice, the opportunity to be heard, and the chance to defend oneself in an impartial tribunal." ***Int. of K.B.***, 331 A.3d 50, 62 (Pa.Super. 2025). "The fundamental requirement of due process is the opportunity to be heard **at a meaningful time and in a meaningful manner**." ***Id.*** (emphasis added).

Instantly, at the August 28, 2024 hearing, the court determined that it would hear witnesses that were available to testify that day and continue the full hearing to a later date to allow for CYF to present further testimony. When the court inquired whether Parents wished to present evidence at that hearing, Parents declined and elected to present evidence at the continued hearing after CYF rested its case. The court assented and did not in any way indicate to Parents that they would not otherwise have an opportunity to present evidence prior to adjudication if they did not do so at the August 28th hearing. Prior to holding the continued portion of the adjudicatory hearing, however, the court entered an order on September 13, 2024, which adjudicated both children dependent. Significantly, the court adjudicated the children dependent without having heard any evidence or testimony from Parents. ***See*** 42 Pa.C.S.A. § 6338; ***Int. of J.R., supra***. Instead, the court relied on evidence that was presented at the shelter care hearing that took place on September 6, 2024, without giving Parents any meaningful opportunity to respond to that evidence at an adjudicatory hearing. ***See id.***

- 14 -

On this record, the court violated Parents' due process rights by adjudicating the children dependent without affording them a meaningful opportunity to be heard and confront the evidence against them. ***See Int. of K.B., supra*** (holding court did not afford Department of Human Services full and fair opportunity to be heard as due process requires when court excluded relevant evidence, continued proceedings, and refused to listen to further testimony at continued proceedings). We acknowledge that at the dispositional hearing on October 2, 2024, the court afforded Parents the opportunity to move to vacate the adjudicatory order, or to request a continuance to do so at a later date. Nevertheless, the mere fact that Parents had the opportunity to move to vacate the adjudicatory order and present evidence to support that motion was insufficient to safeguard Parents' right to be heard and confront the evidence against them prior to the adjudication of dependency. To hold otherwise would place an additional procedural and evidentiary burden on Parents to protect their due process rights. It is clear from the full context of the court's statements at the October 2, 2024 hearing that the court expected Parents to present the evidence that they should have been afforded an opportunity to present prior to the adjudication of dependency, and upon doing so, the court would consider whether to vacate the adjudication order. In other words, the court impermissibly shifted the burden of proof onto Parents to disprove the adjudication of dependency, when Parents were never afforded the opportunity to oppose CYF's evidence in support of adjudication in the first place. Under these circumstances, we

cannot say that the procedure set forth by the court at the October 2, 2024 hearing was sufficient to cure the violation of Parents' due process rights. Accordingly, we vacate the order adjudicating the children dependent and remand for the court to hold a full adjudicatory hearing.[4]

Order vacated. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/30/2025

---

[4] Based on our disposition, we do not address Parents' third issue on appeal.