J-S04045-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.R.M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.M., MOTHER | : : : : : : : | |
| | : | No. 2305 EDA 2025 |

Appeal from the Order Entered August 5, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000585-2025

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                    **FILED MARCH 31, 2026**

M.M. ("Mother") appeals from the order entered on August 5, 2025, in the Court of Common Pleas of Philadelphia County Juvenile Division, finding her to be a perpetrator of child abuse against L.R.M. ("Child"), born in January of 2023, and adjudicating Child dependent.[1]  Mother also appeals from the order entered on that same date finding aggravated circumstances exist as to Mother.[2]  In addition, Mother's counsel, Amy Stidham, Esquire, has filed a

---

[1] T.M. is listed as the father on Child's birth certificate; however, he has since been ruled out as Child's biological father by a paternity test.  **See** Order of Adjudication and Disposition ("Adjudication Order"), 8/5/25, at 2-3.  T.M. intends to voluntarily relinquish his parental rights to Child and is not a party to this appeal.  **See id.** at 3.  The identity and whereabouts of Child's biological father is unknown.  **See** Dependency Petition, 7/14/25, at ¶ 5(n).

[2] Mother filed a single notice of appeal indicating she is appealing from "the order" entered on August 5, 2025, "determining Mother to be a perpetrator of child abuse and … making a finding of aggravated circumstances."  Notice of
*(Footnote Continued Next Page)*

petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After careful review, we grant Attorney Stidham's petition to withdraw and affirm the trial court's adjudicatory and aggravated circumstances orders.

Philadelphia County Department of Human Services ("DHS") first became involved in this matter after receiving a Child Protective Services ("CPS") report on July 5, 2025, alleging "egregious lack of supervision[.]" N.T., 8/5/25, at 8. DHS investigator, Kaylee Lennon, recounted Mother was scheduled to work at 11:00 p.m. on July 4, 2025. **Id.** at 9. Shortly before her shift began, Mother said her babysitter unexpectedly cancelled. **Id.** at 9-10. Unable to find an alternate babysitter and fearful of losing her job, Mother admitted she decided to leave Child home alone, sleeping in her bed. **Id.** at 10-11; **see also id.** at 10 (noting Mother indicated she thought she closed

_____

Appeal, 9/4/25, at 1. However, the trial court entered two separate orders on August 5, 2025, both of which are attached to Mother's notice of appeal. **See** Adjudication Order at 1-2 (adjudicating Child dependent and finding Mother to be a perpetrator of child abuse); Aggravated Circumstances Order, 8/5/25, at 1-2 (finding aggravated circumstances exist as to Mother). Filing a single notice of appeal from multiple orders is discouraged. **See Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 263 A.2d 448, 452 (Pa. 1970). Nevertheless, "appellate courts have not generally quashed such appeals, provided that the issues involved are nearly identical, no objection to the appeal has been raised, and the period for appeal has expired." **In Interest of P.S.**, 158 A.3d 643, 648 (Pa. Super. 2017) (quoting **K.H. v. J.R.**, 826 A.2d 863, 870 (Pa. 2003) (internal brackets omitted)); **see also Interest of S.U.**, 204 A.3d 949, 952 (Pa. Super. 2019) (declining to quash a single appeal from two separate orders adjudicating the child dependent and finding aggravated circumstances). Here, the issues are closely connected, no objection has been asserted as to the single appeal from the two orders, and the appeal period has expired. Thus, we decline to quash Mother's appeal.

and locked the interior bedroom door before leaving for work, but later was unsure); *id.* at 10-11 (recalling Mother's mentioning she was still in a probationary employment period, as she just recently started her job). Ms. Lennon explained Mother and Child were residing on the first floor of a rooming house at the time. *Id.* at 10. They had just moved in days prior to the incident. *Id.* There are two other tenants that live upstairs in the rooming house, but Mother did not make arrangements with either of them to watch Child on the date in question. *Id.* at 11-12; *see also id.* at 11 (conveying Mother was not familiar with the other tenants at the time).

At approximately 2:00 a.m. on July 5, 2025, Child was located outside of the home by an unrelated adult and brought to the 16th police district. *Id.* at 9. The police then escorted Child to Children's Hospital of Philadelphia ("CHOP") for an evaluation. At 5:00 a.m., after Child was discharged from CHOP with no finding of physical abuse, the police took Child to the DHS childcare room. *Id.* Mother reportedly arrived home around 8:00 a.m., realized Child was not there, and went directly to her local precinct, the 16th district. *Id.* at 9, 12. The police informed Mother that Child was at DHS. *Id.* at 9. Mother then went to the Special Victims Unit to give a formal statement, where she explained she left Child home alone because she did not have childcare and was scared to lose her job. *Id.* at 12. Mother admitted to making "a wrong choice[,]" but indicated she had never done this before. *Id.*

DHS obtained an order of protective custody ("OPC"), and Child was placed in foster care. *Id.* at 9. At a shelter care hearing on July 7, 2025,

Child was reported to be safe, the OPC was lifted, and Child's temporary commitment to DHS was ordered to stand. Amended Shelter Care Order, 7/7/25, at 1-2. DHS filed a dependency petition on July 14, 2025, and a dependency hearing was held on August 5, 2025. During the hearing, the trial court heard testimony from DHS investigator, Ms. Lennon, and Community Umbrella Agency ("CUA") case manager, Courtney Labbon. Mother was present and represented by counsel, but did not testify.

In addition to Ms. Lennon's testimony regarding her interview with Mother and the events that unfolded in the early morning hours of July 5, 2025, which we have summarized *supra*, Ms. Lennon testified regarding Mother's mental health and the relationship between Mother and T.M. She reported:

> Mother and [T.M.] currently have active PFAs against one another. There was an incident back in February of this year where there was police involvement. However, no arrests or police report was made, and Mother left the home with … Child and went into a [domestic violence] shelter, leaving [T.M.] at the previous family home.

N.T. at 13-14 (cleaned up). According to Mother, T.M. "was being physical with her and kind of grabbed her in like a bear hug type of grab, and she bit him in order to release herself from [T.M.'s] hold." *Id.* at 14. Whereas T.M. indicated Mother "was having a mental health crisis and he was trying to … refrain [*sic*] and calm her down." *Id.*

Ms. Lennon also recalled: "[T.M.] has brought some concern for [Mother's] mental health to DHS as well as CUA. [T.M.] has stated that

- 4 -

[Mother] has a history of paranoid behaviors and audio hallucinations, as well as visual, and that she's been unstable throughout her life with ups and downs varying." *Id.* at 15. However, there has been no "outside confirmation" regarding Mother's mental health issues, nor has Mother self-reported any history of diagnosis to DHS or CUA. *Id.*

When asked about CPS's report alleging child abuse, Ms. Lennon testified she found the report "indicated." *Id.* Counsel for DHS submitted the CPS Investigative Report prepared by Ms. Lennon into evidence. *See* DHS Exhibit 2 ("CPS Investigative Report") at § IV. Ms. Lennon conveyed DHS's recommendations as to Mother, *e.g.*, domestic violence services as needed, housing assistance, a parenting capacity evaluation ("PCE"), and family school. N.T. at 19. On cross examination, she agreed "Mother is attempting to get a new work schedule so she doesn't have to work nights anymore[;]" Mother has been approved for daycare resources in the event she successfully changes her work schedule to daytime; and Mother has been cooperative with DHS's investigation. *Id.* at 22.

Next, CUA case manager Ms. Labbon testified regarding Child's foster care placement. She indicated Child was placed through A Second Chance and is currently having her basic needs met by the foster family. *Id.* at 24-25; *see also id.* at 24 (stating Child is receiving early intervention services). Ms. Labbon further reported Mother has had three visits with Child since her placement and the visits are going well. *Id.* at 28. Ms. Labbon observed Mother and Child at their first visit and stated they appeared "very close[.]"

*Id.* Ms. Labbon explained Child is too young to verbally express a desire to be back with Mother, but it is clear "she definitely loves her mom." *Id.* at 29. The end of visits with Mother are really hard on Child. *Id.*

Regarding housing, Ms. Labbon stated the rooming house where Mother is currently residing is inappropriate for reunification. *Id.* at 31; *see also id.* (explaining CUA does not allow reunification at "shared room homes" because they are unable to complete a thorough "walk through" of the other tenants' rooms). CUA can make housing referrals, but Mother would have to complete her single case plan objectives first. *Id.*

At the conclusion of the hearing, the trial court adjudicated Child dependent pursuant to 42 Pa.C.S. § 6302,[3] and determined Child was a victim of child abuse perpetrated by Mother as defined by 23 Pa.C.S. § 6303(b.1)(7). *See* Adjudication Order at 1-2; N.T. at 36. The trial court also found clear and convincing evidence to establish the existence of aggravated circumstances as to Mother. *See* Aggravated Circumstances Order at 1.[4]

On September 4, 2025, Mother's counsel filed a timely notice of appeal and, in lieu of a Pa.R.A.P. 1925(a)(2)(i) concise statement of errors

---

[3] *See* 42 Pa.C.S. § 6302(1) (defining 'dependent child' as "[a] child who … is without proper care or control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental, or emotional health, or morals").

[4] Despite its finding of aggravated circumstances, the trial court further directed that efforts shall continue to be made to reunify Child with Mother. *See* Aggravated Circumstances Order at 1.

complained of on appeal, a statement of intent to file an **Anders** brief. On October 29, 2025, the trial court filed a notice of its compliance with Rule 1925(a).

On appeal, counsel raises the following issues on Mother's behalf:

1. Did the trial court commit an error of law and abuse of discretion by determining Mother to be a perpetrator of child abuse?

2. Did the trial court commit an error of law by finding aggravated circumstances exist without proper notice to Mother?

**Anders** Brief at 3.

Before addressing the merits of the issues on appeal, we must first consider counsel's **Anders** brief and petition to withdraw. **See In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020) ("When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (cleaned up).

To withdraw pursuant to **Anders**, counsel must:

1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the [appellant], counsel has determined the appeal would be frivolous;

2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and

3) furnish a copy of the brief to [the appellant] and advise him [or her] of his [or her] right to retain new counsel, proceed *pro se*[,] or raise any additional points that he [or she] deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citations omitted).

With respect to the *Anders* requirement that counsel inform the appellant of his or her rights in light of counsel's seeking to withdraw, we have explained dependency proceedings present a unique circumstance, as "parents have a right to counsel at every stage of a dependency proceeding…." *In re J.D.H.*, 171 A.3d 903, 906 (Pa. Super. 2017); *see also* 42 Pa.C.S. § 6337. Thus, any court-appointed counsel seeking to withdraw pursuant to *Anders* during a dependency matter, "must inform the parent of his or her right to counsel in any subsequent dependency or involuntary termination proceeding." *Id.* "Counsel must also inform the parent that, if he or she cannot afford counsel, he or she may contact the trial court in order to obtain new counsel." *Id.* at 907.

Additionally, our Supreme Court has held an *Anders* brief must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the [trial] court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *In re X.J.*, 105 A.3d 1, 4 (Pa. Super. 2014) (citation omitted);

*see also Santiago*, 978 A.2d at 356 (determining an appeal is frivolous when it "lacks any basis in law or fact"). Our independent review is not limited to the issues counsel discussed in the *Anders* brief, but extends to "additional, non-frivolous issues" that counsel may have overlooked. *In re J.D.H.*, 171 A.3d 903, 908 (Pa. Super. 2017) (citation omitted).

Instantly, Attorney Stidham has filed a petition to withdraw and an accompanying *Anders* brief that comports with the requirements set forth in *Santiago*, *supra*. Therein counsel indicates she has conscientiously examined the record and has concluded the appeal is frivolous. She points to anything in the record that could arguably support the appeal, cites to controlling case law and statutes, and discusses her reasons for concluding the appeal is frivolous. Counsel has also provided the Court with proof that she served Mother with a copy of the *Anders* brief.

In addition, counsel sent Mother a letter dated December 1, 2025, informing her she has a right "to retain new counsel" or to proceed *pro se*, raising any additional points she deems worthy of the Court's attention. *Anders* Brief at Appendix C. However, we concluded counsel's letter did not comply with the requirements as set forth in *In re J.D.H.*, *supra*. In light of this deficiency, we directed counsel to send a revised letter to Mother informing her of her rights pursuant to *In re J.D.H.*, *supra*, and to file with this Court a copy of the revised letter sent to Mother. *See Per Curiam* Order, 2/27/26, at 1-2 (directing counsel to comply "within 10 days of the filing date of this order"). Counsel timely complied. *See* Letter, 3/4/26 (single page)

(counsel's advising Mother she has "the right to retain new counsel in any subsequent dependency or involuntary termination proceedings" and "the right to request that the trial court appoint a new attorney for [her]" if she cannot afford to hire her own attorney); *see also id.* (informing Mother she also has the right to proceed *pro se*, raising any additional points she deems worthy of the Court's attention). Having reviewed Attorney Stidham's revised letter, we are satisfied counsel has complied with the technical requirements for withdrawal. Accordingly, we will independently review the merits of the issues raised in counsel's ***Anders*** brief and ascertain whether there are any other non-frivolous issues Mother could arguably present on appeal.

We address Mother's claims mindful of the following:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). "We accord great weight to the trial court's fact-finding function because the trial court is in the best position to observe and rule on the credibility of the parties and witnesses." ***In Interest of C.K.***, 165 A.3d 935, 941 (Pa. Super. 2017) (cleaned up).

In her first claim, Mother argues DHS failed to present clear and convincing evidence to establish she "intentionally, knowingly, or recklessly perpetrated child abuse by act or omission." ***Anders*** Brief at 13; ***see also id.*** at 14 (suggesting "unintentional or brief lapses in supervision may not rise

to the level of child abuse") (citations omitted).  For the following reasons, we deem this issue meritless.

While dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6387, the Child Protective Services Law ("CPSL"), 23 Pa.C.S. §§ 6301-6388, controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence. *Interest of G.R.*, 282 A.3d 376, 380 (Pa. Super. 2022).  "As part of a dependency adjudication, a court may find a parent to be the perpetrator of child abuse, as defined by the [CPSL]." *Int. of S.L.*, 202 A.3d 723, 728 (Pa. Super. 2019) (internal brackets, quotation marks, and citation omitted).

The CPSL defines 'child abuse,' in pertinent part, as "intentionally, knowingly[,] or recklessly[5] … [c]ausing serious physical neglect of a child." 23 Pa.C.S. § 6303(b.1)(7).  'Serious physical neglect' is defined as, *inter alia*, "[a] repeated, prolonged[,] or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities[,]" which "endangers [the] child's life or health, [or] threatens [the] child's well-being…."  23 Pa.C.S. § 6303(a).

DHS has the burden of establishing child abuse by clear and convincing evidence.  *See Interest of S.A.S.*, 305 A.3d 1039, 1050 (Pa. Super. 2023). "Clear and convincing evidence is 'evidence that is so clear, direct, weighty,

---

[5] The CPSL incorporates the statutory definitions of 'intentionally,' 'knowingly,' and 'recklessly' as outlined in our Crimes Code.  *See* 23 Pa.C.S. § 6303(a); 18 Pa.C.S. § 302(b).

and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" **Id.** at 1050-51 (quoting **Interest of A.C.**, 237 A.3d 553, 558 (Pa. Super. 2020)). "It is not necessary that the evidence be uncontradicted[,] provided it carries a clear conviction to the mind or carries a clear conviction of its truth." **Id.** at 1051 (citation omitted).

Pursuant to Section 6381(d) of the CPSL:

Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d). In interpreting Section 6381(d), our Supreme Court has explained, "*prima facie* evidence is not the standard that establishes the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case." **In re L.Z.**, 111 A.3d 1164, 1178 (Pa. 2015).

The *prima facie* presumption under Section 6381(d) may be rebutted by the parent or other responsible caregiver by

demonstrating that the parent or responsible person did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by DHS and the rebuttal of the parent or responsible person.

**Interest of S.A.S.**, 305 A.3d at 1051 (cleaned up; citation omitted).

Instantly, the trial court based its finding of child abuse on the "uncontroverted testimony" presented at the August 5, 2025 hearing, establishing Mother knowingly[6] left Child unattended, in a rooming house, from 10:30 p.m. at night until 8:00 a.m. the following morning, as well as the CPS investigative report entered into evidence by DHS. ***See*** Trial Court's Notice of Pa.R.A.P. 1925(a) Compliance, 10/29/25, at 1-2 (citing N.T. at 37-38; DHS Exhibit 2)). After hearing the testimony from DHS's witnesses, the trial court stated:

> This is a two-year-old child. … [Mother] left a two-year-old in a house with individuals who were not there to take care of her. This was a rooming house. … The court finds that [Section 6303(b.1)(7)] of the child abuse act applies very specifically to this instance. And again, the term child abuse shall mean intentionally, knowingly, or recklessly doing any of the following. Leaving a two-year-old in a home – that she knew that she was leaving the two-year-old in a home was a very poor decision, but it is what is defined as serious physical neglect of a child.
>
> So I do find that the child abuse has been established in this case. I understand the concern[,] and I hope it doesn't happen ever again, but it certainly meets the legal definition of serious physical neglect to decide to leave a two-year-old in a house without anyone supervising that child, whether [Mother] locked the door

_____

[6] Section 302(b) of our Crimes Code provides:

A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2) (format altered).

or not. Anything can happen. This two-year-old cannot take care of [her]self. … I have not seen a more clear-cut instance, regardless of the motive. The mental state is knowingly, recklessly, or intentionally doing this. There's no refuting that that has been met in this case.

N.T. at 37-39 (cleaned up).

It added:

[T]he circumstances of what was presented to this court today are gravely concerning, given the age of this child. And this is exactly the type of thing that the law is intended to protect against for children particularly at this age.

So I do take issue with particularly the circumstance of what was alleged and was uncontradicted in this case. I don't think Mother is a horrible person in any way. I understand she was under a lot of stress. But she made a decision that left … Child in a position where God knows what could have happened to a two-year-old child that was left home overnight without anyone checking on [her]. This child got out of the house and was found on the street.

*Id.* at 43 (cleaned up). Accordingly, the trial court found Child to be a victim of child abuse perpetrated by Mother pursuant to 23 Pa.C.S. § 6303(b.1)(7). *See id.* at 36-39, 48.

The trial court's findings are supported by the record, and its decision conforms to the applicable law. To review, the CPSL defines 'child abuse,' in relevant part, as "intentionally, knowingly, or recklessly … causing serious physical neglect." 23 Pa.C.S. § 6303(b.1)(7). 'Serious physical neglect' is defined as a repeated, prolonged, or egregious failure to supervise a child that endangers the child's life or health or threatens the child's well-being. 23 Pa.C.S. § 6303(a). Thus, DHS was required to prove Mother intentionally, knowingly, or recklessly caused Child's serious physical neglect, *i.e.*, the repeated, prolonged, or egregious failure to supervise.

- 14 -

DHS presented clear and convincing evidence that Mother made a conscious decision to leave her two-year-old Child unattended overnight in a rooming house. Given Child's sensitive age, we agree with the trial court that Mother's decision constituted an egregious failure to supervise Child which endangered her life and threatened her well-being. *See* N.T. at 9 (stating Child was found outside of the home by a stranger at 2:00 a.m.); CPS Investigative Report at § IV (noting Child was found "wandering alone, barefoot, and wearing a nightgown"); *see also id.* at 12 (Ms. Lennon's testifying that Mother admitted to making "a wrong choice" in leaving Child alone). Thus, the record establishes Mother knowingly caused serious physical neglect as to Child.

Further, having found clear and convincing evidence of child abuse, pursuant to Section 6381(d) of the CPSL, Mother is presumed to be the perpetrator of that child abuse. *See* 23 Pa.C.S. § 6381(d). Mother failed to offer any evidence to rebut this presumption, *i.e.*, testimony that she gave responsibility for Child to another responsible person. *See Interest of S.A.S.*, *supra*. In fact, the record establishes Mother did not arrange for anyone else to supervise Child on the night in question. *See* N.T. at 11 (Ms. Lennon's testifying that when Mother left and went to work, "[t]here was no … formal person in charge of watching [Child] or providing supervision"); *id.* at 12 ("[Mother] did not make arrangements with the other tenants to watch [Child] during that time."). Thus, we discern no error of law or abuse of discretion in the trial court's finding Mother perpetrated child abuse against

Child pursuant to 23 Pa.C.S. § 6303(b.1)(7). As such, we agree with Attorney Stidham that any contrary claim is frivolous.

Mother's second issue regarding the trial court's finding of aggravated circumstances raises due process concerns. Indeed, "[a] parent has the right to due process in any dependency case involving his or her child." **Interest of A.D.-G.**, 263 A.3d 21, 27 (Pa. Super. 2021). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." **Interest of K.B.**, 331 A.3d 50, 62 (Pa. Super. 2025) (emphasis and citation omitted). "In dependency cases, this Court has held due process is satisfied where the party is afforded sufficient notice, the opportunity to be heard, and the chance to defend oneself in an impartial tribunal." **Id.** (citations omitted).

Additionally, we recognize the Pennsylvania Rules of Juvenile Court Procedure provide, "[a] motion for finding of aggravated circumstances may be included in a dependency petition." Pa.R.J.C.P. 1701(A); **see also** Pa.R.J.C.P. 1330(c) (same). "If aggravated circumstances are determined to exist after the filing of a petition, a written motion is to be filed pursuant to Rules 1701 and 1344." Pa.R.J.C.P. 1331, *Comment*. "The aggravated circumstances, as defined by 42 Pa.C.S. § 6302, are to be specifically identified in the motion for finding of aggravated circumstances." **Id.**

Likewise, the Juvenile Act states: "An allegation that aggravated circumstances exist may be brought … in a petition for dependency with regard to a child who is alleged to be a dependent child[.]" 42 Pa.C.S. §

- 16 -

6334(b)(1)(i). "The existence of aggravated circumstances may be alleged by the county agency or the child's attorney." 42 Pa.C.S. § 6334(b)(2). "A petition for dependency … that alleges aggravated circumstances shall include a statement of the facts the county agency or the child's attorney intends to prove to support the allegation." 42 Pa.C.S. § 6334(b)(3).

The Juvenile Act defines 'aggravated circumstances' to include, in relevant part, circumstances where "[t]he child … has been the victim of … aggravated physical neglect by the parent." 42 Pa.C.S. § 6302. 'Aggravated physical neglect' is defined as "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id.*

Notably, Section 6351 of the Juvenile Act provides: "**If** the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall **then** determine if aggravated circumstances exist." 42 Pa.C.S. § 6351(e)(2) (emphasis added). Thus, this Court has determined, "it is a condition precedent that either the county agency or child's attorney allege aggravating circumstances before a trial court can make such a determination." *In Interest of N.M.*, 186 A.3d 998, 1002 n.11 (Pa. Super. 2018).

Here, Mother contends "the dependency petition did not state that DHS was seeking a finding of aggravated circumstances, and no separate written motion for a finding of aggravated circumstances was filed by any party."

***Anders*** Brief at 16. As she was not given notice prior to the August 5, 2025 hearing that such a finding was being sought, Mother asserts the trial court erred in finding aggravated circumstances existed as to her. ***Id.*** at 15-16; ***see also id.*** at 16 (suggesting the lack of notice violated Mother's right to due process). Attorney Stidham argues, however, this issue is waived because "no objection was raised to the lack of a written motion for a finding of aggravated circumstances at the trial court level[.]" ***Id.*** at 16.

As such, before we address the merits of Mother's claim, we must first determine whether she has preserved the issue for our review. "The issue of waiver presents a question of law[;] … our standard of review is *de novo* and our scope of review is plenary." ***Trigg v. Children's Hosp. of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. Super. 2020). "As a general matter, it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal." ***Id.*** (citing Pa.R.A.P. 302(a)).

Our review of the transcript confirms neither Mother nor her counsel objected to the lack of written notice for a finding of aggravated circumstances at the August 5, 2025 hearing. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). "Waiver may not be avoided by alleging the error to be basic and fundamental, or of constitutional dimension." ***Com. ex rel. Bulson v. Bulson***, 419 A.2d 1327, 1328-29 (Pa. Super. 1980) (internal citations omitted); ***see also Smith v. Smith***, 340 A.2d 552, 553 (Pa. Super. 1975) (declaring constitutional

issues of equal protection and due process could not be raised for the first time on appeal).

Further, "the mere filing of an **Anders** brief and petition to withdraw will not serve to resuscitate claims that were already waived upon the filing of the notice of appeal." **Commonwealth v. Cox**, 231 A.3d 1011, 1016 (Pa. Super. 2020); **but cf. id.** (acknowledging this Court may overlook certain waiver-causing procedural errors committed by **Anders** counsel **after** the filing of a notice of appeal, to ensure any non-frivolous issues are not missed) (citing **Commonwealth v. Hernandez**, 783 A.2d 784, 787 (Pa. Super. 2001) (overlooking **Anders** counsel's failure to file a court-ordered Pa.R.A.P. 1925(b) concise statement)).  Thus, we are constrained to deem this issue waived.[7]  Consequently, pursuing this issue on appeal is frivolous.  **See Commonwealth v. Tukhi**, 149 A.3d 881, 888 (Pa. Super. 2016) ("An issue that is waived is frivolous.").

_____

[7] We note, pursuant to Section 6351 of the Juvenile Act:

> If the court finds by clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent … or to preserve and reunify the family shall be made or continue to be made….

42 Pa.C.S. § 6351(e)(2).  "The court may direct that no reasonable efforts be made or continue to be made at its discretion."  **Interest of A.D.-G.**, 263 A.3d at 29.  However, we observe that here, despite its finding of aggravated circumstances, the trial court found "[e]fforts shall continue to be made to preserve the family and reunify … Child with … Mother."  Aggravated Circumstances Order at 1.  Hence, we do not discern any prejudice to Mother as a result of her counsel's failure to preserve this issue below.

Additionally, our independent review of the record has disclosed no non-frivolous issues overlooked by Attorney Stidham. *See J.D.H.*, 171 A.3d at 908. Therefore, we grant counsel's petition to withdraw from representation and affirm the trial court's August 1, 2025 orders.

Petition to withdraw granted. Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/31/2026